## Hosack *v.* Crill, Appellant.

*Mines and mining—Severance of coal—Deed.*

After severance of the surface from the underlying strata, whether by reservation or by express grant, the mineral right is an independent interest in land; it forms a distinct possession; is held upon a distinct title, and is as much the subject of sale, devise or inheritance, and of separate taxation and incumbrance as the surface. The technical words " grant, bargain and sell," or the like, are not necessary to the creation of a separate estate in the coal, provided the intention to sell the coal is manifest; and it is now well settled that an instrument which is in terms demise of all the coal in, under and upon a tract of land, with the unqualified right to mine and remove the same, is a sale of the coal in place; and this, too, whether the purchase money stipulated for is a lump sum or is a certain price for each ton mined, and is called rent or royalty; and also, notwithstanding a term is created within which the coal is to be taken out.

As between the parties to the instrument and their privies a conveyance of the underlying coal—the grantor retaining the surface—effects severance in title; under our statute the recording of the conveyance takes the place of a livery of seisin, and the subsequent possession of the holder of each estate follows his right.

Where the words, " grant, bargain and sell," are used in connection with coal and words of inheritance are added, it is to be presumed, unless a contrary intent clearly and affirmatively appears, that the parties intended them to have their ordinary legal effect, which is to vest in the grantee the entire ownership of the coal in the land described.

Argued May 14, 1901. Appeal, No. 78, April T., 1901, by defendant, from decree of C. P. Mercer Co., April T., 1899, No. 2, on bill in equity in case of Samuel Hosack, Executor of John Hosack, deceased, Jacob Shilling and W. W. Shilling, v. John T. Crill. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity to determine rights to certain coal.

MILLER, P. J., found the facts to be as follows:

1. John Hosack, the decedent, and Hugh B. Wick entered into the following written agreement on August 26, 1863, and the said agreement was recorded in the recorder's office of Mercer county, February 18, 1864, in article book C, page 123.

"Article of Agreement made and concluded this 26th day of August, 1863, between John Hosack, of the Township of Find-

ley, County of Mercer, State of Pennsylvania, party of the first part, and Hugh B. Wick, town of Youngstown, County of Mahoning and State of Ohio, party of the second part, as follows: the party of the first part for and in consideration of one dollar to him in hand paid as well as the agreements hereinafter mentioned does hereby bargain, sell and convey unto the party of the second part his heirs or assigns all the mineral coal and iron ore in, upon and under the tract of land in the Township of Findley in the County of Mercer in said State, bounded and described as follows: The first tract is bounded northerly by lands of James Alexander and others, easterly by lands of William Pardoe and Hugh Evans, southerly by lands of B. Sidley, westerly by lands of Jacob Vanatta, containing about 240 acres. Second tract is bounded northerly by lands of James Connelly's heirs, easterly by lands of Lawrence Boyer, southerly by lands of James Johnson, westerly by lands of David Bastress, 131 acres of land; containing in the whole 381 acres of land; granting to the party of the second part or his heirs or assigns as well as his and their laborers and workmen the right to enter upon said lands at any time hereafter and search for coal and ore, and when found to remove the same from said lands, together with all the rights and privileges incident to mining and securing said coal and ore, including the right of egress and ingress and to dig, mine and explore and occupy with such buildings and constructions as may be necessary and useful for the full enjoyment of the advantages of said coal and ore, and with the refuse from said mines, and also the right to mine and remove the coal and ore of adjoining lands through, over or under said lands during the continuance of this agreement.

" And the party of the second part agrees by himself, his assigns and workmen to enter upon and make search for coal and ore upon the lands above described, and should he find coal and ore in said lands and adjoining lands of sufficient thickness, quantity and quality to justify him, the party of the second part to open and work said mines, then he or his representatives or assigns shall pay to the party of the first part, his heirs or assigns, within five years after the completion of a railroad on or near the above described premises, made in connection with any other leading railroad, by which said minerals can be taken to any large market, the sum of ten dollars a year during the con-

tinuance of this agreement; and the failure to make these advance payments yearly upon request or within one year after demand upon the party of the second part shall be deemed an abandonment of this agreement or lease, but not to the injury of the second party or his assigns. And the party of the second part shall have the right to abandon the said lands and mining at any time and remove all his buildings and fixtures from said land.

" It is further understood and agreed by the parties that if the party of the second part shall fail to construct or cause to be constructed the above contemplated railroad within fifteen years from the date of this contract, the party of the second part shall pay to the party of the first part the above named sum of ten dollars a year until the railroad is constructed and mining is commenced on said premises ; and the said party of the second part by himself and his assigns, and workmen agrees to pay to party of the first part, his legal representatives or assigns, the sum of five cents for each ton of 2240 pounds of screened coal mined and removed from said lands herein described, and the price or rent of the ore mined or removed from said lands for such gross ton of 2240 pounds shall be five cents for screened and cleaned; but it is understood and agreed that any advance payments of ten dollars as above mentioned to be paid yearly that shall be made to the party of the (second) party of the first part are to apply. on the payment of rent of coal first mined thereafter. The payment of rent on coal mined and removed shall be made yearly, and all payments required by this agreement shall be made and accepted in bankable funds of the State of Pennsylvania.

" It is mutually understood by the parties that the coal under any dwelling houses or other permanent buildings shall not be mined out and as little injury to the surface of said lands shall be done as possible in mining, removing and transportation of said coal and ore as herein contemplated.

" It is further understood and agreed by and between the parties to this contract that the party of the first part .agrees to grant and give to the party of the second part all the land necessary for the location, construction and occupancy of a public railroad as above contemplated.

" It is further agreed that the party of the first part may mine

for his own use coal from said premises until the railroad is completed.

"It is also mutually understood that the stipulations herein contained shall apply to and bind the heirs, executors, administrators and assigns of the parties respectively.

"In witness whereof the parties hereunto set their hands and seals the day and year first above mentioned.

"All interlineations and erasures made before signing.

"JOHN HOSACK.　[Seal]<br>
"HUGH B. WICK.　[Seal]

"Sealed and delivered in the presence of

"JAMES H. WELLS,<br>
"JONATHAN SNYDER,<br>
"W. N. PARDOE.

"August 26, 1863, acknowledged.　Recorded Article Book C, page 153, etc., on February 18, 1864."

2. John Hosack was on August 26, 1863, and prior thereto, the owner of the premises mentioned in said agreement.

3. John Hosack died on February 5, 1868.

4. The search for coal and ore contemplated in said agreement was not made until sometime in the year 1868, and subsequent to the death of John Hosack.

5. The railroad contemplated in the agreement was constructed as far as Pardoe in February, 1869, and the same crossed the premises mentioned in the agreement.

6. Mining operations were commenced by Hugh B. Wick, or by those acting under him, in the immediate neighborhood of the premises mentioned in this lease during the month of June, 1869, but not before.

7. John Hosack made his last will and testament bearing date January 29, 1868, which was duly probated on February 13, 1868, before the register of wills of Mercer county.

8. John Hosack by his last will devised to his daughter, Clarissa A. Hosack, afterwards intermarried with J. W. Barker, fifty acres of land mentioned in said agreement between John Hosack and Hugh B. Wick; said fifty acres being the same land from which the fund has accrued for coal mined thereunder, and for which fund this suit is brought.

9. All the right, title, property and estate of Clarissa A. Hosack, afterwards Clarissa A. Barker, under the devise in her father's will aforesaid to the said fifty acres of land became vested by sundry conveyances and assurances in law in John T. Crill, the defendant, on September 4, 1885, when he went into possession of said fifty acres of land and has since remained in possession thereof.

10. The amount of coal mined and removed from under said fifty acres of land since mining was commenced by the Mercer Mining Company, and prior to August 1, 1898, was 11,353.27 gross tons of screened coal, the royalty for which amounts to $472.66.

11. The coal above mentioned was mined and removed by the Mercer Mining Company, a corporation duly established and existing under the laws of the commonwealth of Pennsylvania, under and by virtue of the rights and privileges acquired by them in their acquisition of the rights and privileges of the said Hugh B. Wick in said written agreement of August 26, 1863, with said John Hosack.

12. That Jacob H. Shilling has deeds of assignment from Samuel Hosack and John Hosack, two sons of John Hosack, deceased, and Thomas Irwin and wife, the wife being a daughter of John Hosack, deceased, by which deeds and assignments they transfer to Jacob H. Shilling all their right, title, interest and claim of, in and to all the coal and iron ore on and under the two several pieces or parcels of land mentioned and described in said written agreement between John Hosack and Hugh B. Wick; and the said Jacob H. Shilling has also assigned prior to the bringing of this suit the undivided one-half interest so acquired by aforesaid deeds of assignment to W. W. Shilling.

13. The parties to this suit each claiming the fund in question and each threatening to bring suit against the Mercer Mining Company for said fund, the mining company filed its bill for interpleader and this issue was accordingly framed to determine the rights of the respective parties to the money admitted by said mining company to be in its hands and control.

14. The fund in dispute arises from the mining of coal from and under the said fifty acres of land by the Mercer Mining Company as aforesaid.

## CONCLUSIONS OF LAW.

1. That the coal contract between John Hosack and Hugh B. Wick of August 26, 1863, effected a sale of the coal in place to the said Wick, his heirs and assigns.

2. That after the execution of said contract by Hosack no interest in the minable coal remained in the grantor subject to be conveyed or devised by him as land.

3. That the devise of fifty acres by John Hosack to his daughter Clarissa in the third paragraph of his will did not vest in her the underlying coal, nor any interest in the coal contract with Hugh B. Wick, nor any interest in the royalty contracted for in said contract.

4. That the title to said fifty acres of land vested in said Clarissa by the devise aforesaid having by divers conveyances become vested in John T. Crill, the said Crill's title rises no higher than its source and he has no larger estate in the land than said Clarissa had under said devise, and therefore by virtue of his deeds he obtained no estate in the minable coal, nor in the coal contract, nor in the royalty accruing therefrom.

5. That the royalty stipulated for in said coal contract passed under the residuary clause of John Hosack's will to his children share and share alike.

6. That Jacob H. and W. W. Shilling holding assignments from the proper persons of three fifths of the royalty accrued and to accrue under said coal contract are entitled to have three fifths of the money in this case distributed to them, and the other two fifths to be distributed to Samuel Hosack, surviving executor of John Hosack, deceased, to be paid by him to the persons entitled thereto.

Accordingly the court finds in favor of the plaintiffs, and assesses their damages at $572.66 ; and it is further ordered that the costs of this proceeding up to this date be paid by the plaintiffs according to their respective interests.

### ORDER.

And now June 26, 1900, the prothonotary is directed to enter judgment in favor of the plaintiffs, Samuel Hosack, executor of John Hosack, deceased, and Jacob H. Shilling, and W. W. Shilling, and against the defendant, the Mercer Mining Company, for the sum of $572.66, without costs.

*Error assigned* was the decree of the court.

*S. S. Mehard,* with him *W. W. Moore* and *J. W. Bell,* for appellant.—The contract in question gave to Wick, in the first place, an option on the coal in Hosack's land, to be exercised by search and possession: Moore v. Miller, 8 Pa. 273; Clement v. Youngman, 40 Pa. 341; Bussman v. Gonster, 72 Pa. 285; Delaware, Lackawanna & Western Railroad Co. v. Sanderson, 109 Pa. 589; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483; McKee v. Colwell, 7 Pa. Superior Ct. 607; Hooks v. Forst, 165 Pa. 238.

Wick, after search and acceptance of the coal, became a lessee under Hosack, with right to remain in possession upon payment of a rental of $10.00 a year, payment to begin after five years from the completion of the contemplated railroad, or after fifteen years from the date of the contract.

The parties to the contract did not intend an immediate and absolute sale of the coal in the land described from Hosack to Wick; but they intended that Wick should have the right to mine and remove so much coal as he saw fit and that he should pay for only so much as he actually took: Caldwell v. Fulton, 31 Pa. 475; Sanderson v. City of Scranton, 105 Pa. 469; Delaware, etc., R. R. Co. v. Sanderson, 109 Pa. 583, 589; Fairchild v. Dunbar Furnace Co., 128 Pa. 485, 497; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Lazarus's Est., 145 Pa. 1; Plummer v. Hillside Coal & Iron Co., 160 Pa. 613; Clement v. Youngman, 40 Pa. 341; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Funk v. Haldeman, 53 Pa. 229; Grove v. Hodges, 55 Pa. 504; Jennings v. Beale, 158 Pa. 283; Delaware, Lackawanna & Western Railroad Co. v. Sanderson, 109 Pa. 589; McKnight v. Mfg. Nat. Gas. Co., 146 Pa. 185; Hill v. Joy, 149 Pa. 245; Montooth v. Gamble, 123 Pa. 240.

The grant of the reversion would carry with it the rights of the grantor in the lease between Hosack and Wick: Johnson v. Smith, 3 P. & W. 496; Bank of Penna. v. Wise, 3 Watts, 394, 404; Reed v. Ward, 22 Pa. 144, 149; Linton v. Hart, 25 Pa. 193.

*B. Magoffin,* for appellee.—The court was clearly right in

holding that the contract was in no sense an option, and the authority cited, McMillan v. Philadelphia Co., 159 Pa. 142, fully sustains the ruling. That the subject of the contract being land, coal in place, and the contract having been placed on record within the time prescribed by law, six months, confirmed possession in Wick, his heirs and assign as firmly as feoffment with livery of seizen: Eckman v. Eckman, 68 Pa. 460; Delaware & Hudson Canal Co. v. Hughes, 183 Pa. 66.

The payments were to be payments on the coal whether any had been mined or not, and the contract in this respect does not differ in principle from the numerous cases decided by this court that such advance payments are purchase money for the coal to be applied on coal as mined thereafter at the stipulated price per ton: Sanderson v. City of Scranton, 105 Pa. 469; Delaware, Lackawanna & Western Railroad. Co. v. Sanderson, 109 Pa. 583; Lazarus's Estate, 145 Pa. 1; Lehigh & Wilkesbarre Coal Co. v. Wright, 177 Pa. 387.

If the owner grants to another the right or privilege of taking coal from his lands this grant, if not an exclusive one, is not the grant of an interest in the land, but of an easement or incorporeal right which leaves the title to the coal in place remaining in the grantor. But a grant of all the coal, or of the exclusive right to mine the coal, is a sale of the coal in place: Delaware & Hudson Canal Co. v. Hughes, 183 Pa. 66.

OPINION BY RICE, P. J., July 25, 1901:

All the parties to this litigation affirm the validity of the contract of August 26, 1863, and there has been no failure of performance of any of the covenants that entered into its consideration. The controlling question, therefore, is whether it was a mere license, a mere option, or a sale of the coal in place. That minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface, is, of course, unquestioned. After severance of the surface from the underlying strata, whether by reservation or by express grant, the mineral right is an independent interest in land; it forms a distinct possession; is held upon a distinct title; and is as much the subject of sale, devise or inheritance, and of separate taxation and incumbrance as the surface. The technical words " grant bargain and sell," or the like, are not necessary to the creation

of a separate estate in the coal, provided the intention to sell the coal is manifest; and it is now well settled that an instrument which is in terms a demise of all the coal in, under and upon a tract of land, with the unqualified right to mine and remove the same, is a sale of the coal in place; and this, too, whether the purchase money stipulated for is a lump sum or is a certain price for each ton mined, and is called rent or royalty; and also, notwithstanding a term is created within which the coal is to be taken out: Finnegan v. Stineman, 5 Pa. Superior Ct. 124, citing Sanderson v. City of Scranton, 105 Pa. 469; Delaware Lackawanna & Western R. R. Co. v. Sanderson, 109 Pa. 583; Montooth v. Gamble, 123 Pa. 240; Kingsley v. Hillside Coal & I. Co., 144 Pa. 613; Lazarus's Estate, 145 Pa. 1; Timlin v. Brown, 158 Pa. 606; Plummer v. Hillside C. & I. Co., 160 Pa. 483; Lehigh, etc., Coal Co. v. Wright, 177 Pa. 387; Hope's Appeal, 29 W. N. C. 365; Fairchild v. Fairchild, 7 Central Repr. 873; s. c. 9 Atl. Repr. 255. As between the parties to the instrument, and their privies, a conveyance of the underlying coal—the grantor retaining the surface—effects severance in title; under our statute the recording of the conveyance takes the place of a livery of seizen, and the subsequent possession of the holder of each estate follows his right: Finnegan v. Stineman, supra; Eckman v. Eckman, 68 Pa. 460; Delaware & Hudson Canal Co. v. Hughes, 183 Pa. 66. In the instrument under consideration all the formalities of a conveyance in fee intended for record were observed, and it was duly recorded. The subject-matter of the grant was the coal itself and not a mere license to mine coal upon compliance with certain conditions. Whilst the technical words "grant, bargain and sell" are not necessary to the creation of a separate estate in the coal, yet where they are used and words of inheritance are added, as was the case here, it is to be presumed, unless a contrary intent clearly and affirmatively appears, that the parties intended them to have their ordinary legal effect, which is to vest in the grantee the entire ownership of the coal in the land described. And, where the technical words to convey a fee either in the surface or the underlying minerals are used, this presumption cannot be overthrown by an argument based solely on the supposed inadequacy of the covenants of the grantee as a principal consideration for a conveyance in fee. The distinc-

tion above suggested is not to be lost sight of in the consideration of the cases on the subject. It was distinctly recognized in Grove v. Hodges, 55 Pa. 504, as we understand that case. Nor is the foregoing conclusion in conflict with the ruling in Clement v. Youngman, 40 Pa. 341, which was decided upon its own peculiar facts, and not upon a principle which controls in the present case. Whether or not, in the circumstances existing in 1863, the grantor made a wise bargain, we are not called upon to say, but the able argument of the appellant's counsel has failed to convince us that he did not intend what the language of his deed imports, namely, to pass the fee in the coal to the grantee.

We concur as to the main question in the conclusion reached by the learned judge of the court below, and substantially for the reasons given in his clear and satisfactory opinion. We do not deem it necessary to add anything further to what he has said. It follows that the coal under the fifty-acre tract devised to Clarissa Barker did not pass by the devise and that the royalties accruing after the death of the grantor, being purchase money for the coal sold, are distributable as personalty according to the provisions of his will.

Judgment affirmed.