## Arnold, Appellant, *v.* Cramer.

*Mines and mining—Coal—Sale of coal in place—Construction of instrument—Abandonment.*

1. The technical words "grant, bargain and sell" or their equivalent are not necessary to pass the title to coal in place if from language of the whole instrument the intention to sell is apparent.

2. A lease or demise of all the coal in a tract of land with a right to mine and take away the same is a sale of the coal in place.

3. Whether the instrument be called a lease or deed all of its provisions must be taken into consideration to ascertain the intent of the parties. If from that consideration the intention of the parties is found to have been to make a sale, their contract will be so interpreted. And where this intention is clear the construction of the instrument is not affected by the fact that compensation is stipulated for a fixed price per ton or at a gross sum for the whole price, nor that the compensation is called rent or royalty.

4. Where the consideration for the agreement is to be determined by the output of the mine the law implies a covenant on the part of the grantee that he will prosecute the work with reasonable diligence, so

that the grantor may receive the compensation which was in view when the agreement was made. That the grantor did not protect himself by a requirement for a minimum production from the mine does not change the character of the instrument.

5. Abandonment as to a perfect title can only be affirmed on a state of facts sufficient to raise an estoppel or where possession has been acquired and held under a claim of title by limitation.

6. Abandonment is ordinarily a question of intention. There must be an intention to abandon as well as an actual abandonment of property, and where the character of the transaction depends on the intent of the party it is competent for him to testify what his intention was.

Argued March 1, 1909. Appeal, No. 36, March T., 1909, by plaintiffs, from decree of C. P. Wayne Co., June T., 1906, No. 2, dismissing bill in equity in case of Juliette Arnold et al. v. George W. Cramer et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity to cancel a coal lease.

The case was referred to H. Wilson, Esq., referee.

From the record it appeared that the lease was in the following form:

" This Article of Agreement made and concluded this 7th day of June in the year of our Lord 1888, Witnesseth: that William N. Arnold, of South Canaan, Wayne County, Penna., of the one part doth by these presents let unto Walter M. Leek of Clifford Twp. Susq. County Penna. of the other part the following described premises: Namely all of his undivided one-half interest in and to all that parcel or parcels of land situate in the township of Clinton, County of Wayne and State of Penna. bounded by lands of D. and H. C. Co. Hillside C. and I. Co., the Eaton Lot &c., containing one hundred and thirty-three acres and ninety-two perches being the same lot or parcel of land which was conveyed by Mrs. S. I. Roberts and others by deed to S. and Wm. N. Arnold, and recorded in Deed Book No. 24 page 223. From the 25th day of May A. D. 1888, for the term of Ninety-Nine years next ensuing, and from year to year thereafter. And the said Lessee doth hereby covenant and promise to pay to the said Lessor or his assigns the sum of twelve and one-half cents (12 1–2 cents) per ton on all coal mined and sold

from said land of the grades coarser than that known as Buckwheat Coal and the said Lessee furthermore agrees to commence selling said coal within six months from the date hereof, and to mine and prepare all coal at his own proper cost and expense. The said Royalty to be due and payable at the termination of each three months for the amount mined and sold during said three months, allowing ten days grace for fixing amount and results. This lease expires when coal is exhausted. It is considered as a part of this agreement that the said Lessee shall have full control and entire management of all the lands herein described, surface and coal during the continuance of this Lease the full and complete consideration therefor being the above name 'royalty' of twelve and one-half cents per ton for the coal of grades coarser than Buckwheat coal mined and sold. It is understood and agreed that the Lessor and Lessee shall each pay an equal amount of all taxes assessed or levied on the above described lands. And by these presents the parties hereunto, together with their heirs and assigns are firmly bound. Witness our hands and seals the day and year above written. In presence of

"F. P. Arnold,                  Wm. N. Arnold (l. s.)

"J. D. Leek.                  Walter M. Leek (l. s.)"

Other facts appear by the opinion of the Superior Court.

The referee found in favor of the plaintiff, but his exceptions were sustained by Purdy, P. J., and a decree was entered dismissing the bill.

*Error assigned* was decree dismissing the bill.

*H. W. Mumford*, with him *David E. Anthony*, for appellants. —The interest vested in Leek was an estate for ninety-nine years, and thereafter from year to year, determinable earlier upon the exhaustion of the coal, and further determinable at the discretion of the lessee after the commencement of selling within six months. It was an estate for years, with all the incidents of such an estate.

An abandonment of the leased premises by the lessee, with a failure to perform his covenants, express or implied, may, at the

election of the lessor, be treated as an implied surrender, or a surrender in law, and such surrender may be implied from acts inconsistent with an intention to continue the use and occupancy of the premises.

Under the circumstances, no entry or demand by the lessor was necessary to terminate the lessee's estate. There was nothing which the lessor could demand but payment of the royalties, and as no coal had been mined there was nothing to pay.

The erection of structures for mining purposes by the defendants is wholly immaterial, since, as owners of an undivided one-half interest in the fee, they had a right to mine the coal, subject to the duty of accounting to their cotenants.

*W. W. Watson*, with him *F. K. Tracey*, for appellees.—The agreement of lease was a sale of the coal by Arnold to Leek: Kingsley v. Iron & Coal Co., 144 Pa. 613; Plummer v. Coal & Iron Co., 160 Pa. 483; Lazarus's Est., 145 Pa. 1.

There was no abandonment of the lease or premises: Bartley v. Phillips, 179 Pa. 175; Philadelphia v. Riddle, 25 Pa. 259; Putnam v. Tyler, 117 Pa. 570; Venture Oil Co. v. Fretts, 152 Pa. 451; Paull v. Mackey, 3 Watts, 110.

OPINION BY HENDERSON, J., October 11, 1909:

If we concede that there was jurisdiction in equity to entertain the complainant's bill we are met by the objection that the contract of June 8, 1888, which the complainants seek to have canceled, transfers a half interest in the coal underlying the land described to Walter M. Leek, the second party. The language used is "Doth by these presents let," but the technical words "grant, bargain and sell" or their equivalent are not necessary to pass the title to coal in place if from the language of the whole instrument the intention to sell is apparent. Numerous cases hold that an instrument which is in terms a lease or demise of all the coal in a tract of land with a right to mine and take away the same is a sale of the coal in place: Hope's Appeal, 29 W. N. C. 365; Montooth v. Gamble, 123 Pa. 240; R. R. Co. v. Sanderson, 109 Pa. 583; Lazarus's Estate, 145 Pa. 1; Timlin v. Brown, 158 Pa. 606; Coolbaugh v. Lehigh & Wilkes-Barre

Coal Co., 213 Pa. 28; Hosack v. Crill, 18 Pa. Superior Ct. 90. Whether the instrument be called a lease or deed all of its provisions must be taken into consideration to ascertain the intent of the parties. If from that consideration the intention of the parties is found to have been to make a sale, their contract will be so interpreted. And where this intention is clear the construction of the instrument is not affected by the fact that compensation is stipulated for a fixed price per ton or at a gross sum for the whole price, nor that the compensation is called rent or royalty. Examination of the agreement referred to satisfies us that the parties intended a sale of the coal. It disposes of all of the first party's interest for the period of "ninety-nine years next ensuing and from year to year thereafter." It further provides, "This lease expires when coal is exhausted." The second party covenanted to pay to the first party or his assigns the sum of twelve and one-half cents per ton on all coal mined and sold from said land, of grades coarser than that known as "buckwheat coal" and agreed to commence selling coal within six months from the date of the agreement. It was stipulated that royalty be due and payable at the termination of each three months for the amount mined and sold during the said three months, allowing ten days' grace for fixing amount and results. The agreement bound the parties, their heirs and assigns, and was under seal. There was, therefore, a grant of the coal and an agreement to pay therefor at a price fixed, times stated at which payment should be made and an agreement that the title should continue in the second party as long as the coal lasted. It is argued that this agreement is distinguishable from any of those contained in the cases cited in that the contract contains no engagement to take or sell more than the quantity which it might be necessary to mine in order to "commence selling within six months," and that having commenced selling within that time the second party was at liberty to throw up the enterprise at any time thereafter. But we do not so interpret the contract. It was undoubtedly the intention of the parties that the mine should be worked with reasonable diligence and that the output should bear a relation proportionate to the capacity of the mine and the state

of the market. The spirit of the agreement implies this, and that much the grantors could insist upon. Where the consideration for the agreement is to be determined by the output of the mine the law implies a covenant on the part of the grantee that he will prosecute the work with reasonable diligence, so that the grantor may receive the compensation which was in view when the agreement was made: Watson v. O'Hern, 6 Watts, 362; Lyon v. Miller, 24 Pa. 392; Koch's Appeal, 93 Pa. 434. That the grantor did not protect himself by requirement for a minimum production from the mine does not change the character of the instrument. There is no clause of forfeiture nor any provision for a reversion as to any part of the coal, but the grantor was not without remedy on his contract. Such being the nature of the interest held by the appellees the doctrine of abandonment does not apply. They held a complete title to the half interest in the coal, and abandonment only takes place in case of imperfect title: Bear Valley Coal Co. v. Dewart, 95 Pa. 72; Putnam v. Tyler, 117 Pa. 570. Abandonment as to a perfect title could only be affirmed on a state of facts sufficient to raise an estoppel or where possession has been acquired and held under a claim of title by limitation. If, however, the case turned on the question of abandonment we find no reason for criticising the conclusion of the learned judge of the court below. Neither the defendants nor those under whom they hold ever acknowledged an abandonment, and their conduct in making and receiving conveyances is inconsistent with an intention to abandon. The destruction of the breaker by fire suspended mining operations, but a large expense was involved in the reconstruction of the plant, and this fact or the state of the market and the expense of operating the mine may have been an excuse for delay. The owner of the half of the mine in which the plaintiffs had no interest was losing any profit which might have been derived by operating the property equally with the plaintiffs and had the same motive for activity in prosecuting the business which they had. We cannot say that the delay is sufficient evidence of abandonment to overcome the terms of an express covenant. The letters written by Crawford and Leek to Arnold in 1899 show a desire to lease or

otherwise dispose of the property, but they are not inconsistent with the position taken by the defendants. The property was idle and a large expenditure would be necessary to put it into working order, and all concerned were interested· in realizing in some form on the investment. Whatever Crawford and Leek may have understood their obligation to be under the contract the correspondence does not clearly show that they recognized that their rights were forfeited. Both in July, 1899, the year in which the letters from Leek and Crawford were written, and in February, 1902, the defendants were asserting the existence of the lease as shown by the deed from Leek to Cramer and Cure and by the lease from Crawford to Cramer and Cure. The heirs of Arnold did not attempt to take possession of the premises or exercise any ownership over it during the time the mine was not in operation, and the evidence does not disclose a state of facts from which it can be satisfactorily concluded that there was a surrender of the interest. Abandonment is ordinarily a question of intention. There must be an intention to abandon as well as an actual abandonment of property, and where the character of the transaction depends on the intent of the party it is competent for him to testify what his intention was: Juniata Building & Loan Association v. Hetzel, 103 Pa. 507. This rule was applied in Bartley v. Phillips, 179 Pa. 175, where the lessee of the owner was permitted to prove that in removing certain materials from the land they had no intention to abandon the lease. We are not persuaded that an error was committed in the decree entered in this case. It is, therefore, affirmed.