# Smith's Estate.

*Mines and mining—Sale of coal in place—Lease—Construction of written instrument.*

A written instrument will be construed as an absolute sale of coal in place wherein by its terms an owner of the coal grants to the grantee his heirs and assigns the right and privilege to mine and carry away all the coal in a vein particularly described, with minimum tonnage per year to be paid for if mined or not and without any time limit within which the coal must be removed, and with an obligation on the grantee to pay the taxes.

Such a construction of the agreement will not be changed by a later agreement providing for the annullment of the agreement on failure to pay royalties within twenty days after they were due, and which also provided that the agreement should not be transferred without the written consent of the grantor.

Argued Nov. 14, 1917.   Appeal, No. 308, Oct. T., 1917, by Samuel Calvin Smith, from decree of O. C. Blair Co., Jan. T., 1917, No. 175½, sustaining exceptions to auditor's report in Estate of Eliza Calvin Smith, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Exceptions to report of O. H. Hewit, Esq., auditor.

BALDRIGE, P. J., filed the following opinion:

On the 3d day of October, 1887, Samuel Calvin and James L. Mitchell entered into an agreement which provided that Calvin "by these presents doth grant, convey to the said Mitchell, his heirs and assigns, the right and privilege to mine and convey all the coal in the strata or vein of coal known as the Lemon vein," in a tract of land in Cambria County, containing 400 acres, "and by these presents hath and doth lease to the said Mitchell, his heirs and assigns, twenty (20) acres of the surface of said tract for the purpose of erecting coke ovens, tenant houses, the plant and fixtures on the same, to be held until he shall have mined and taken out all the workable coal in said vein." In consideration whereof Mitchell without limitation as to time was to work the mine in a skillful manner and to pay Calvin eight (8) cents per ton royalty for the first four years and mine not less than thirty thousand (30,000) tons annually, and thereafter he was to pay nine (9) cents per ton royalty; Mitchell was to pay all taxes assessed on the said tract of land so long as it remained uncultivated and unimproved and deduct one-half the taxes from the quarterly installment, and was to pay all the taxes on the twenty acres on which he had the privilege of erecting the improvements. Calvin agreed that he would war-

rant and defend the rights and privileges granted to
Mitchell, and that he would indemnify and save and
keep harmless Mitchell and his heirs and assigns from
any damages sustained by reason of any claim or con-
flict of title to the tract of land.

Samuel Calvin died, intestate, on March 12, 1890, leav-
ing to survive him a widow, Rebecca S. Calvin, and two
children, Eliza Calvin Smith and Matthew Calvin, Esq.
In March, 1895, an agreement supplemental to that of
October 3, 1887, was entered into between the widow
and heirs of Samuel Calvin and J. L. Mitchell, president
of the Mitchell Coal & Coke Company, reciting the fact
that Mitchell was indebted under the original agreement
in the sum of $1,679.86 for royalties, and that he was re-
leased from payment thereof.

This latter agreement provided, further, for the pay-
ment of the royalty in the future at the rate of nine
cents per ton, and "Should such quarterly payments re-
main unpaid for 20 days after the same fall due, or
should the covenants in this or the original agreement
not be complied with, then the said Mrs. Smith, Mrs.
Calvin and M. Calvin may, at their option, rescind and
cancel this and the said original agreement by written
notice to that effect to said Mitchell, and said company,
with same effect as if the same had not been entered into,
with the right to reënter and take possession of the said
premises, reserving to them the right to collect the ar-
rearages of money due on said agreement. It is further
stipulated that the rights of said Mitchell and of said
company under the original agreement, and under this
agreement, shall not be transferred, nor the premises,
nor any part thereof, be let, demised or granted to an-
other without the written consent of the said widow
and heirs shall have been first obtained; and it is fur-
ther understood and agreed that all the provisions of
said agreement of October 3, 1887, not altered by this
agreement shall be continued in full force and effect as
therein specifically set out."

376, (1918).]          Opinion of Court below.

Eliza Calvin Smith died on September 26, 1913, testate, leaving to survive her two children, Samuel Calvin Smith and Mary MacDonald Smith, intermarried with Frank W. McFarland, and one grandchild, Eliza Smith Steck, minor child of a deceased daughter, Rebecca Calvin Steck.

Mary MacDonald McFarland died, intestate, on October 25, 1914, survived by her husband, Frank W. McFarland, who was appointed administrator of her estate.

In answer to a citation Samuel Calvin Smith, surviving executor of Eliza Calvin Smith, filed a first and partial account of the administration of his trust. Exceptions were filed thereto, and an auditor was appointed to pass thereon.

Exceptions which we must pass upon were filed to the report of the auditor. They relate (a) to the excessive compensation allowed of $50 to the accountant, attorneys' fees and expenses of the audit.

Eliza Calvin Smith died seized of personal property amounting to about $47,000. There was an amicable arrangement between her two children whereby most of the assets were distributed, but as the surviving executor was cited to file an account it was his duty to render a just account of not a portion, but all of the goods and chattels and credits of the deceased whether they had been distributed or not. In view of the size of the estate and necessary labor required to discharge this duty, the charges of the accountant and attorney are not unreasonable.

(b) The exceptions to the expense of the audit are likewise overruled. There was not a large amount of testimony taken before the auditor, but the legal questions involved, which we will discuss hereafter, required a large amount of investigation and careful consideration.

(c) The exception most vigorously urged is that the learned auditor failed to surcharge the accountant with

the moneys received under the agreement above recited since the death of Mary MacDonald McFarland. The exceptant contends that under this agreement there was a sale of the coal, and that, therefore, the royalties paid thereunder were personal property and should have been accounted for by the surviving executor. If personal property, Frank West McFarland, the surviving husband of Mary MacDonald McFarland, would be entitled to the royalty absolutely; if real estate he would have but a life interest therein.

This exception involves the interpretation of the two leases.

The auditor concluded that there was a conditional sale of the coal, and, therefore, the money should be treated as rent of real estate. The auditor says:

"After a most painstaking examination and consideration of all the authorities cited by the respective counsel upon this question, and of many other authorities upon the same subject not cited by either of the counsel involved in the case, we are convinced that it is impossible to reconcile the reasoning of the opinions in these cases. It very clearly appears, however, from the opinions of our Appellate Courts in some of the cases decided in recent years that the doctrine laid down in the earlier cases, commencing with Hope's App., 29 W. N. C. 365, down to and including Lazarus' Est., 145 Pa. 1 (in which practically all agreements known as coal leases were construed to be absolute sales of the coal in place), is not sound doctrine, and that the trend of modern authority is to adopt, in the construction and interpretation of such agreements, the rule that each agreement must be construed from its own terms, and this rule of construction, in our own courts and elsewhere, has been stated to be 'The great rule of interpretation, with respect to deeds and contracts, is to put such construction upon them as will effectuate the intention of the parties, if such intention be consistent with the principles of

law.'  See Hollingshead v. Fry, 4 Dallas, 321, Stover v. Stover, 9 S. & R. 433."

The auditor for his conclusion relies upon Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh & Wilkes-Barre Coal Company, 213 Pa. 28, and Gallagher v. Hicks, 216 Pa. 243.

The dispute in Denniston v. Haddock was whether after a lease had expired by limitation and a new lease entered into the lessee could defalk the overpayments under the old lease from the royalties due under the new lease.  Mr. Chief Justice MITCHELL, in delivering the opinion of the court, says:

"It has been said in a number of cases that a conveyance of the right to mine and remove all the coal in a given tract of land, is a sale of the coal in place, although the conveyance may be called a lease.  This expression is unfortunate, for while it may have produced no erroneous result in the cases where it is used, it tends to substitute the general rules appertaining to sales, for the rules properly applicable to the particular contract that may be under consideration by the court.  Thus for example, in Hope's App., 29 W. N. C. 365, which is practically the starting place of the error, the agreement though called a lease was a purchase of the coal at a fixed price per acre, making a liquidated gross sum. ......It was justly said by the learned court below, whose decision was affirmed here, that it was 'manifest that the parties contemplated an actual sale of the coal, and not a lease in the ordinary use of that word.'  In Sanderson v. Scranton, 105 Pa. 469, the lease was expressly made, 'perpetual until all the coal under the tract is mined,' and it was held that this was such a complete severance that the taxes of the City of Scranton on the coal in place were chargeable to the lessee and not the lessor.  So in Kingsley v. Hillside Coal and Iron Company, 144 Pa. 613, it was again held that there was such a severance that occupation of the surface was not

an adverse possession even against a lessee who had not opened up or entered on actual possession of the coal.

*With the decisions in these cases no fault can be found,* but the expression that a conveyance of coal in place, even by a lease for a *limited term is a sale* (the italics are our own) is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead, which is apparent in some of the subsequent cases. Nor can the argument that time was not of the essence of the contract prevail. The principle invoked is not applicable. Time in a lease in respect to the length of the term is a limitation of the estate, and always of the essence of the conveyance."

In Coolbaugh v. Lehigh and Wilkes-Barre Coal Company the question involved was whether under the terms of the lease the lessor retained an interest or estate in the coal to which the lien of a judgment would attach. In the disposal of this question it was necessary to determine whether there was a lease or sale of the coal.

We do not have the benefit of the entire agreement, but we note in the opinion of Chief Justice Brown that "the agreement of the parties is that the minimum royalty of twenty thousand dollars may be applied by the lessee on account of the purchase-money of the coal, provided it will actually purchase and acquire title in the manner pointed out in the agreement, viz: by mining it within six years. Until it is so mined the legal title remains in the lessors, and if not taken from them within *six years during the continuance of the lease* (the italics are our own) in the manner stated, the money paid them belongs to them as rental for their land which had been occupied by the lessee, though not used and appropriated by it as it had the right to do."

The closing paragraph of the opinion of the learned Chief Justice is deeply significant:

"As the question raised on this appeal did not arise in any of the cases holding a lease like the present to be a sale of coal in place as land, they are not to be regarded

as in conflict with the view expressed here.  Though expressions in some of them are apparently irreconcilable with it, it is to be remembered, as is said in Denniston v. Haddock, 'the rules applicable to sales are not to be applied indiscriminately' to these leases; and when, as here, the question is as to the right of the grantor or lessor to subject the interest in the land which remains in him to the lien of a judgment or mortgage, not other doctrine than the one announced by the court below can accord with reason of the authorities relating to the interest retained by a vendor under an agreement for the sale of his land."

In Gallagher v. Hicks, supra, Chambers leased to Hicks all the coal known as the upper Freeport seam, lying or being in, upon or under a certain tract of land, with the sole exclusive right to take coal, etc., etc. *Hicks, the lessee, had the right to surrender the lease at any time on payment of all the royalties due* (the italics are our own), and on the other hand Chambers could declare the lease forfeited if the royalties should remain unpaid for three months.  The court held that Chambers had a continual interest in the land which was bound by a judgment against him, and that under a sheriff's sale all the right, title and interest of the lessor, the right to the royalties passed to the purchaser.

It will be noted in these cases just cited that all the leases are for a limited period of time, and that the question of distribution amongst the next of kin or heirs is not involved.

The Supreme Court in these very cases emphasize repeatedly that the earlier cases, which the auditor does not follow, are correctly decided, and that these later decisions are in no wise antagonistic thereto.  If we were to accept the auditor's conclusion it could be only by ignoring a long line of cases with which, to use the words of Mr. Chief Justice MITCHELL, in Denniston v. Haddock, "no fault can be found."  As we interpret the cases cited and relied upon by the auditor, they do not war-

384            SMITH'S ESTATE.

rant his conclusion; the warning given therein is that it is inaccurate to hold that a lease for a *limited term* should be interpreted as a sale by the court. That is all. The agreements in these cases are for a limited, or a definite term. No case cited sustains the proposition that when all the coal to exhaustion is granted and conveyed, without limitation of time for mining and removing it, that there is a lease or conditional sale thereof.

In the case of Sanderson v. City of Scranton, 105 Pa. 469, which the Supreme Court recognized as a sound authority, the agreement under consideration was similar to the agreement involved in this present discussion. A. made an agreement with B., leasing to him all the coal beneath the surface of a certain tract of land. The lessee was to mine and remove each year a minimum quantity of coal. In the event of default the lease was to be forfeited. It was not for a term certain with reversion to the grantor, but until all the coal under the surface had been mined. The court held that the mere fact that the indenture contained a reservation of rent, with the right of distress, would not change its legal effect and operation; that there was a severance of the surface, and that an independent interest in the land, with a distinct right of possession and title, subject to sale, devise or inheritance, was obtained by B. It necessarily followed that there was an absolute sale of the coal in place.

In the case of Dorr v. Reynolds, 26 Pa. Superior Ct. 139, the facts are strikingly like those in the case at bar. An instrument was entered into to demise all the coal in and under a certain tract of land, with the unqualified right to mine and remove the same, with a forfeiture clause for nonperformance. The lessor died, leaving to survive him a widow and children. The widow died and her executor demanded one-third of the royalties. The lower court held that the royalties were personalty and as such one-third of them went to the widow absolutely. An appeal was taken to the Superior Court and Judge HENDERSON, delivering the opinion of the court, affirmed

the decisions of the lower court, holding that it is now well settled that an instrument which is in its terms a demise of all coal, with the right to mine and remove the same, is a sale of the coal in place. The appellant cited Denniston v. Haddock, supra, in support of their contention, so that the Superior Court had before them the case and the benefit of the reasoning therein. They expressly recognized and held that Sanderson v. Scranton, Lazarus' Est., and similar line of authorities, was still the law of the State. See also Fairchild v. Fairchild, 6 Sadler 231; Kingsley v. Hillside Coal & Iron Company, 144 Pa. 613, and Murray's Est., 216 Pa. 270.

We quite agree with the conclusion of the auditor that in the interpretation of a coal lease the same rule of construction should be followed as in construing any other instrument, viz: to effectuate the intention of the parties when consistent with the principles of law.

That there was a forfeiture clause and a restriction upon the rights of the party to transfer the lease led the auditor to the conclusion that it was the intention of the parties that a conditional sale only should be effected. We have seen in Sanderson v. City of Scranton, supra, and Dorr v. Reynolds, supra, that when there is a sale of all the coal, but no limit of time to remove it, with a forfeiture provision in case of default in payment, the law assumes that that is an expression of their intention that the conveyance should be an absolute sale; the expression of the parties admits of no other conclusion. Does the clause providing "And under this agreement, shall not be transferred, nor the premises, nor any part thereof, be let, demised or granted to another without the written consent of the said widow and heirs shall have been first obtained" change the entire effect of the instrument? Is this restriction sufficient to reduce the conveyance from an absolute to a conditional sale?

In no event can we agree with the auditor's construction of the agreements when he concludes that there was a conditional sale. The grant is not dependent upon any

condition or contingency.  The clause permitting the assignment of the vendees' interests only upon their approval is, in our judgment, an independent, several covenant for the breach of which the grantors have a remedy either at law or in equity.

All the essential qualities of an absolute sale are present in the original and Supplemental leases, which all parties in interest agree must be construed together. Samuel Calvin, the lessor, was a lawyer of high standing at this bar, and unquestionably understood the import of the formal technical words "grant and convey," and the effect of the words of inheritance and the warranty. His widow subsequently joined in the supplemental agreement,  so that is no question as to her dower rights being involved; the sale, except as to her dower rights, was completed in the lifetime of Samuel Calvin; Mitchell was then vested with the coal rights.  The precautions that the widow and heirs of Calvin exercised to prevent the property from coming into unsatisfactory hands in no way affected the extent of the title in Mitchell.

It does not appear in the testimony, but the account filed shows, and the auditor refers to the fact that the royalties are now paid by the Pennsylvania Coal & Coke Company, which company we presume is the assignee of the Mitchell Coal & Coke Company.

If the interest of the parties is not clear from the instrument itself, but in equilibro, the words should be construed most strongly against the grantor: Miner's App., 61 Pa. 283; Philadelphia v. Peters, 18 Pa. Superior Ct. 388.  This doctrine applies with especial force when something is withheld from the grantee: Klaer v. Ridgway, 86 Pa. 529.

A careful study of the agreement and of the authorities governing their construction leads us to the conclusion that there was an absolute sale of the coal.

The exceptions to the report of the auditor for failing to charge the accountant with royalties received from

376, (1918).] Opinion of Court below—Opinion of the Court.
the Pennsylvania Coal & Coke Company, assignee of the Mitchell Coal & Coke Company, amounting to $314.97, and for construing the lease to constitute a conditional sale instead of an absolute sale of the coal, and that the royalties therefrom are real estate and not personal property are hereby sustained. All other exceptions are overruled.

*Error assigned* was the decree of the court.

*W. I. Woodcock* and *Thomas Raeburn White,* with them *Robert W. Smith,* for appellant, cited: Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28.

*Marion D. Patterson,* with him *Matthew Calvin,* for appellee, cited: Dorr v. Reynolds, 26 Pa. Superior Ct. 139; Murray's Est., 216 Pa. 270; Lazarus' Est., 145 Pa. 1; Arnold v. Cramer, 41 Pa. Superior Ct. 8.

OPINION BY HENDERSON, J., March 2, 1918:
The decision of the learned trial judge was in harmony with Hope's App., 1 Sadler 307; Sanderson v. Scranton, 105 Pa. 469; Fairchild v. Fairchild, 6 Sadler 231; Delaware, Lack., Etc., R. R. Co. v. Sanderson, 109 Pa. 583; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293; Kingsley v. Coal and Iron Co., 144 Pa. 613; Lazarus' Est., 145 Pa. 1; Del. & Hudson Canal Co. v. Hughes, 183 Pa. 66; Hosack v. Crill, 18 Pa. Superior Ct. 90; Dorr v. Reynolds, 26 Pa. Superior Ct. 139; Arnold v. Cramer, 41 Pa. Superior Ct. 8; Lazarus v. The L. & W. Coal Co., 221 Pa. 415. The grant of Calvin was to Mitchell, his heirs and assigns. The subject of the grant was "all the coal in the vein known as the Lemon Vein." There was no time limit within which the coal must be removed and the consideration fixed on the basis of a royalty was to be paid whether coal was taken out or not. The whole estate in the coal covered

by the agreement was transferred to Mitchell. The intention of the parties to make a sale of the coal is fairly inferable from the terms of the grant. The covenant with respect to insuring the payment of the purchase-money was made long after the execution of the original agreement and does not affect the nature of the estate; nor does the restriction on alienation. Whatever the effect of that covenant may be it did not operate to change the essential nature of the grant from Samuel Calvin to James Mitchell.

It is contended on behalf of the appellant that the decisions in Denniston v. Haddock, 200 Pa. 426, and Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28, in effect reverse Hope's App., supra, and the cases following it. It may be conceded that the comprehensive language used in Hope's Appeal is qualified in the Denniston and Coolbaugh cases, but they have not the effect of reversing the earlier decisions. On the contrary, it was said by Mr. Justice MITCHELL in Denniston v. Haddock, referring to Hope's Appeal, Sanderson v. Scranton, King v. Hillside Coal and Iron Co., and other cases of that class: "With the decisions in these cases no fault can be found but the expression that a conveyance of coal in place even by a lease for a limited term is a sale, is inaccurate as a general proposition of law......The point to be noted is that the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract, by its own terms." The title there under consideration was a lease for twenty years. Time was held to be of the essence of the contract and as there was a period fixed as the end of the term that was held to be a limitation of the estate. All the interest which the lessee had was that which he could acquire during the continuance of the term and in this respect the facts were materially different from those now before us where all of the coal was granted and no limitation of time was imposed. The point in Coolbaugh v. Coal Co., was whether the interest

of one of the lessors was subject to a lien during the continuance of the lease. The question of the retained security for the payment of the royalty by the grantor or lessor or the power of the latter to subject his right under the grant or lease to the lien of a judgment or mortgage did not arise in any of the cases on which the court relied in entering the judgment now appealed from. It is a very different question from that now presented where no interests are involved except those of the original parties to the contract or their successors. It might well be held as was done in the case last cited that the law relating to the interest retained by a vendor under an article of agreement for the sale of his land as security for the purchase-money should apply in the case of a judgment against the grantor. But this is not inconsistent with the rule that where the instrument conveying the title bears on its face evidence of a purpose to dispose of the whole subject of the contract the transaction should be treated as a sale rather than a lease. The question is discussed at length by the learned trial judge in his opinion which clearly states the law applicable to the facts.

The judgment is affirmed.