## Kriechbaum *v.* Hafer, Appellants.

*Equity—Quarry leases—Accounting.*

Where, in a suit in equity for an accounting, it appeared that the defendants were the lessees of a quarry which they were to operate under an agreement to furnish at the end of each week a true and correct record and account of all stone removed from the land and to pay for the same at the rate of six cents per perch for all stone so removed, and where it was distinctly understood that two cartloads should represent a perch, and where, after the signing of the

contract, new carts substantially larger were substituted by the defendants for the old ones, the plaintiff is entitled to an accounting for the amount of stone taken from the quarry.

Argued Oct. 29, 1918.   Appeal, No. 225, Oct. T., 1918, by defendants, from decree of C. P. Franklin Co., Equity Docket, Vol. IV, page 78, in case of Rebecca Kriechbaum v. Frank Hafer and Quigley Hafer.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Bill in equity for discovery and accounting.

The opinion of the Superior Court states the case.

GILLAN, J., filed the following opinion, dismissing exceptions:

This brings us to the consideration of the exceptions filed by the defendant.   The first and second exceptions are to the eleventh and thirteenth findings of fact.   These two findings of fact are based on the uncontradicted testimony in the cause.   To have omitted to find these facts would have been to utterly ignore the testimony.   To have found the facts contrary to what we have here would have been to find facts contrary to the positive evidence and to have found facts unsupported by any evidence.   The remaining exceptions may be considered together.   As well said by counsel for defendant in his written brief: "the eighteen exceptions filed raise but two questions; first, whether or not the contract between the parties constituted a sale of the stone in place." The whole argument on the part of the defendant is in support of his position that the agreement constitutes a sale of the stone in place.   We have held that the agreement constitutes a lease.   It seems to us that the question is not of vital importance.   If this were an action of ejectment or some similar action where it became necessary to determine whether the defendants by the agreement secured real estate or personalty, whether they acquired a corporeal or incorporeal interests, then it would be of vital importance to determine whether or not it was

a sale of the stone in place. But what have we here? A plain simple agreement on the part of the owner of the premises that the defendants shall have the right and privilege of removing the rock and stone, and that they shall pay for the same at the rate of six cents per perch as removed; this agreement to continue until the stone is exhausted. There is nothing uncertain about it. What else have we? The admission by both parties that the quantity of stone was to be ascertained by considering two cart loads a perch. This is as plain as though written in the contract that the stone should be paid for at the rate of three cents per cart load. Of course it is to be presumed that each party had in mind the size of the cart. For four years or more the operations were conducted and the stone paid for at this rate. There was no dispute between the parties as to the statement that two cart loads were to be considered a perch. The parties were entirely able to make the contract as they did make it. The verbal contract as to what should constitute a perch is as binding as though written in the agreement.

It is only necessary to read the evidence of the witness, John Atherton, to understand that an accurate measurement of this stone in place would be an impossibility. Counsel for defendant insist that the courts have settled beyond dispute that an agreement such as this constitutes a sale of the stone in place. He points to Arnold v. Cramer, 41 Pa. Superior Ct. 8, and says that to hold that the agreement here under consideration does not constitute a sale of the stone in place is to disregard and misapply the law as laid down in that case. Every contract must be considered in the light of the subject matter. To apply the same rule to limestone as is applied to coal can not be done. This is so from the very nature of the formation. Everyone knows that coal is found in different layers or strata, that one layer or strata can be removed without seriously interfering with the other, that coal can be removed without disturbing the surface, if the surface be properly supported. Limestone is found in the

218, (1919).]   Opinion of Court below—Arguments.

solid mass, and no portion of it can be removed without disturbing the surface.    In order to remove the limestone the surface must be removed.   As will be seen from the testimony of George K. Lehner, the earth covering the limestone in this quarry is only about four feet in depth.

The court has personally inspected this operation, as he had a right to do.   An even hasty examination of the premises will convince anyone that the removal of the rock and stone as coal is usually removed from the earth would be an utter impossibility.   The whole nature of the formation is so different that to apply the same rules cannot be done.

The conclusion of the whole matter is this: Defendants agreed to pay for the stone quarried at the rate of six cents a perch, two cart loads constituting a perch; they changed the size of the carts, using larger ones, and therefore of course must pay for the stone they removed by the larger carts in excess of that which they held over a perch.   [The exceptions filed by the defendant are all overruled.]   (17).   The exceptions filed by the plaintiff are overruled.   The reasons given by us in our findings of fact and conclusions of law, as filed and which are now excepted to, are sufficient to support these conclusions.

The court decreed that the defendants pay to plaintiff the sum of $367.54 with interest on the same from the 26th day of March, 1918, and costs of the proceeding. Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*Charles Walter,* and with him *Isaac I. Wingert* and *Arthur W. Gillan,* for appellants.—The agreement is a sale of stone in place: Arnold v. Cramer, 41 Pa. Superior Ct. 8; Montooth v. Gamble, 123 Pa. 240; Railroad Co. v. Sanderson, 109 Pa. 583; Lazarus's Est., 145 Pa. 1; Watson v. O'Hern, 6 Watts 362; Lyon v. Miller, 24 Pa.

392; Koch's App., 93 Pa. 434; Caldwell v. Fulton, 31 Pa. 475; Clement & Masser v. Youngman & Walter, 40 Pa. 341.

*J. A. Strite,* and with him *Edwin D. Strite,* for appellee.—The agreement was a lease and not a sale: Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124; Denniston v. Haddock, 200 Pa. 426; Gallagher v. Hicks, 216 Pa. 243.

The case in the last analysis involved a question of fact, and the court below, after personal inspection, was best fitted to pass upon it: Clothier v. Hoffman Company, 261 Pa. 83; Amsler v. McClure, 238 Pa. 409.

OPINION BY ORLADY, P. J., February 28, 1919:

The plaintiff was the owner by fee simple title of a limestone quarry, which under a verbal arrangement was operated by the defendants for a considerable time, when on July 28, 1914, they entered into an agreement in writing, defining the boundary of the quarry and providing that the defendants "Would furnish and supply, at the end of each week during the term of this lease, a true and correct record and account of all the stone removed from the said land, and will pay, on or before the fifteenth day of the month immediately succeeding the removal of said stone, . . . . . . six ($.06) cents per perch for all stone so removed." The parties were familiar with the quarry, the manner in which it was operated, and it was distinctly understood by each that "Two cartloads shall represent a perch." It is conceded that the carts in use at the time were the ones the parties had in mind as determining the amount of stone, two of which should represent a perch, though they were not technically accurate in having the cubical content. The business was conducted in a satisfactory way until new carts substantially larger were substituted by the defendants for the old, when this controversy arose as to the amount of stone taken out by the

defendants, and resulted in the plaintiff filing a bill in equity for discovery and accounting.

The written agreement was made to the end, that the terms of the earlier oral one "may be definitely set forth and determined," and the parties made the law of the case for themselves in regard to the measurement of the output of the quarry, which was fixed by a standard well known to them, and was acted upon for a number of years. This was changed by the defendants without the consent of the plaintiff. There is nothing ambiguous in the language of the contract. Its terms were well understood, and there was no dispute until the larger cart bed was substituted.

It is now urged that a construction should be given to the writing, holding that the lease was a sale of the stone in place, and that the rule announced in Arnold v. Cramer, 41 Pa. Superior Ct. 8, should govern, to wit: That the defendants were entitled under their contract to have the quantity ascertained in place, and that it was a sale of the limestone in place. It is not necessary to examine this complicated phase of the case, as the parties by their agreement fixed for themselves the measurement of and payment for the stone taken from the quarry. The name given to the writing is not material, as there can be but one construction placed on it, and that is as interpreted by the parties, to wit: the plaintiff was to receive six ($.06) cents for each perch of stone removed on the basis that two cartloads as then used were to be considered a perch. The findings of fact by the court below was fully warranted by the evidence, and the decree might well be affirmed on the very careful opinion filed to sustain the decree entered. The other assignments of error are not material, and are not considered.

The decree is affirmed.