## Carlin & Co. *versus* Chappel.

1. A surface owner is entitled to actual support for his land at the hands of the owner of mines beneath it.

2. Where the owner of land conveyed it in fee simple, excepting and reserving all the underlying coal, with the right of mining, excavating and conveying away the same; and subsequently conveyed to another party the coal and privileges so excepted and reserved: *Held*, that the grantor's assigns of the coal were liable for damages occasioned to the owner of the surface by subsidence caused by mining the underlying coal. That the mining was carefully done according to the usual practice of mining was no defence.

3. Scranton *v.* Phillips, 13 Norris 15, distinguished.

October 17th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October Term 1882, No. 60.

Case, by Henry Chappel against John Carlin and Thomas McLaughlin doing business as Carlin & Co., to recover damages for injuries to plaintiff's house and lot by subsidence, caused by excavations made by defendants while engaged in mining the coal lying beneath the surface.

On the trial, before STOWE, P. J., the following facts appeared: One John Brown, being the owner in fee simple of a tract of land situate in Chartiers township, Allegheny county, by deed dated in 1864 granted and conveyed to David Lewis and his heirs certain lots, part of said tract, the deed containing the following clause:

"Excepting and reserving to John Brown all the coal underlying said lots of ground, the right and full and free privilege of ingress, egress and regress for digging, mining and excavating said coal (for the purpose of mining, digging, excavating and conveying away said coal)."

By sundry conveyances the title of Lewis to certain of said lots became vested in the plaintiff, the deed to him from his immediate grantor being dated August 22d 1865, and containing this clause:

"All the coal underlying the same, together with the full and free privilege and right of ingress, egress and regress, so far

as may be required for digging, mining, excavating and conveying away said coal, being vested in John Brown."

At the time the plaintiff purchased the land, there was a small frame house erected thereon.

The coal underlying said lots was, after the above mentioned conveyance by Brown to Lewis, sold by judicial sale, and became vested, by sundry conveyances, in the defendants, who were practical coal miners. In the prosecution of their business in excavating and conveying away said coal the surface of plaintiffs' land settled, and broke and injured his frame house erected thereon. The plaintiff testified that after the damage occurred he went in and examined the mine, and found that the coal had all been removed, leaving no pillars or other support for the surface.

The defendants presented, inter alia, the following points:

2. Under the title in evidence in this case, the defendants are not insurers for the surface of the soil; all the duty imposed upon them is to leave such support as would ordinarily support the surface of the land. Refused.

3. The right of the defendants to take all the coal underneath the surface land owned by the plaintiff, is indisputable, and the law does not exact from the defendants more than an ordinary, careful taking away the coal from underneath the surface of the plaintiff. Refused.

Verdict and judgment for the plaintiff, for $200, whereupon the defendants took this writ of error, assigning for error the refusal of the above two points.

*Thomas M. Marshall* (*John Coyle* with him), for the plaintiffs in error.—The grantor having expressly excepted and reserved *all* the coal underneath the lots conveyed, with the right to mine and take it away, he and his assigns of the coal are not liable for damages caused to the grantees of the surface, or their assigns, for any result following their removal of "all" the coal. The grantor conveyed nothing that limited his pre-existing right to remove all the coal; the contract was unambiguous, the minds of the parties met on a clear understanding, the grantee of the surface got all that he paid for. He did not bargain or pay for the easement of support, but expressly bought without it, and he cannot now impair the rights of his grantor. The case is ruled by Scranton *v.* Phillips, 13 Norris 15. There is no policy of law which prohibits the owner of land, when conveying the surface, from excepting and reserving all the substrata with right of removal, without providing surface support; on the contrary such right is recognized in the cases of Jones *v.* Wagner, 16 P. F. S. 429; Horner *v.* Watson, 29 P. F. S. 242; Coleman *v.* Chadwick, 30 P. F. S. 81.

*Bird* (*Porter* with him), for defendants in error.—In Scranton *v.* Phillips the deed contained not only a reservation of the coal, but an express release by the grantee from any future claim to damages caused to the surface by mining. That case is inapplicable to this, where there is merely a reservation of all the coal with right to mine. In such case the natural easement of support exists, and the surface owner, while perhaps not entitled to hold the mine owner as an insurer, is nevertheless entitled to an absolute right to vertical support from him: Jones *v.* Wagner, 16 P. F. S. 430 ; Horner *v.* Watson, 29 P. F. S. 250; Coleman *v.* Chadwick, 30 P. F. S. 81; Brown *v.* Torrence, 7 Norris 186.

Mr. Justice GREEN delivered the opinion of the court, November 20th 1882.

This was an action brought by an owner of the surface against the defendants, miners of coal underneath, to recover damages for injuries to the plaintiff's house by reason of the cracking and sinking of the soil occasioned by the mining operations of the defendants. Neither the testimony nor the charge of the court is printed, and the only question arising upon the record is whether the court was in error in refusing two of the defendants' points. One of the points was as follows : " Under the title in evidence in this case the defendants are not insurers for the surface of the soil, all the duty imposed upon them is to leave such support as would ordinarily support the surface of the land." The remaining point expresses the same idea, though in slightly different language, thus, " The law does not exact from the defendants more than an ordinary careful taking away the coal from underneath the surface of the plaintiff." There is no doubt that under the reservation contained in the deed from the original owner, all the coal underlying the plaintiff's premises was reserved to the grantor, and this coal and the right to remove it became vested in the defendants. The question was, what kind of support of the surface were the defendants bound to leave ? By their points they asked the court to say " such support as would ordinarily support the surface of the land," or such as would be left by " an ordinary, careful taking away the coal from underneath the surface of the plaintiff." Practically this amounts to the doctrine that " ordinary" instead of " actual " support, is all that the surface owner is entitled to. In other words, if the support is apparently sufficient though not so in reality, the duty of the defendants is discharged. We do not understand this to be the law, nor even that the question is an open one under our recent decisions. In the case of Horner *v.* Watson, 29 P. F. S. 242, this very subject was fully considered and determined. The court below

was asked to charge that if the defendants " conducted their mining operations according to the approved, established and customary course and practice of mining in this region and without any negligence in the operation of mining," they would not be responsible for damages caused by surface water breaking in through openings made in the surface by the mining operations. This the court refused and charged that the defendants would be responsible for the introduction of surface water, though not of subterranean water, without any reference to actual negligence or want of skill in the miner. The court said, after stating the right of an upper mine owner to flood a lower mine with subterranean water accumulated from mining in an ordinary way : " But otherwise where the mining is done in such a manner (whether the ordinary way or not) as to introduce foreign water from the surface or higher level, by reason of the roof falling in, and thus introducing water from the surface which would not have flowed in if the roof of the mines had remained undisturbed and compact after the coal was removed." Our brother GORDON in an exhaustive opinion, stating this to be the whole question, reviewed our own and the English cases and showed that the court below was right in its ruling, and that even a custom of mining so as to take away all the coal without leaving sufficient surface support would be illegal and void. On page 248 he said, " But the learned judge who tried this case in the Common Pleas refused to recognize any such custom. In this we think he was right. This identical point was raised in the case of Jones v. Wagner, 16 P. F. S. 429, where it was held that of common right, the mining right was servient to the surface to the extent of sufficient supports to sustain it, and that there could be no custom to the contrary. The reason given for this conclusion was that the business of mining in the western part of the state was of a date too recent to give such a custom the age necessary for its validity. We are willing however to go one step further, and say that the alleged usage lacks another essential feature of a good custom, and that is reasonableness. It is not reasonable that that which the law grants as of common right should not merely be modified, but abrogated by custom or usage." In Bainbridge on Mines and Minerals, star page 433, the doctrine is thus stated : " It is now established by recent decisions that as a general rule of law, the owner of the surface is entitled to absolute support—and, as in cases of rights to water, not as an easement or right depending on a supposed grant but as a proprietary right at common law." And again, on p. 434 : " When there is an absolute right of support, it is not material that the surface owner is ignorant or cognizant of the state of the mines, or the mode of working, or that the mine owner has shown the utmost skill and prudence in working them."

[Carlin *v.* Chappel.]

It will here be seen that the right of the surface owner is declared to be a right to absolute support, and that when such a right exists it is of no consequence with what degree of skill and prudence the mine owner conducts his operations. The writer cites and reviews many decisions of the English courts in support of the text. Thus in Harris *v.* Ryding, 5 M. & W. 60, which was a grant of the surface with a reservation of all the minerals and a right of entry to take them away, Baron ALDERSON said, speaking of the rights of the surface and mine owners respectively, "They are each to enjoy their right of property and each is to act in respect of those rights of property, upon the maxim that he is to use his own property so as not to injure his neighbor," and that the miner is to get his minerals "in that reasonable and ordinary mode in which he would be authorized to get them, provided he leaves a proper support for the land which the other party is to enjoy." Baron PARKE said, "I do not mean to say that all the coal does not belong to the defendants, but that they cannot get it without leaving sufficient support." That is, whatever may be the right of the miner as to the minerals, they must be taken in a reasonable and ordinary manner, and in any event a support must be left, which shall be sufficient to sustain the surface. In Humphries *v.* Brogden, 12 Ad. & Ell. N. S. 739, Lord CAMPBELL, C. J., commenting upon this case said, "But the Barons, in the very comprehensive and masterly judgment which they delivered seriatim, seem all to have thought that the reservation of the minerals would not have justified the defendant in depriving the surface of a complete support, however carefully he might have proceeded in removing them." The same learned judge, in the course of his elaborate and exhaustive opinion, also said, on p. 745, "Something has been said of a right to a reasonable support for the surface; but we cannot measure out degrees to which the right may extend; and the only reasonable support is that which will protect the surface from subsidence and keep it securely at its ancient and natural level." The jury found that the company defendant had worked carefully and according to the custom of the country, but without leaving sufficient supports or pillars. Notwithstanding this finding a verdict was entered for the plaintiffs, which was sustained by the court after the fullest consideration. Lord CAMPBELL, defining more especially the right of the surface owner, said on p. 744: "Pari ratione, when there are separate freeholds, from the surface of the land and the minerals belonging to different owners, we are of opinion that the owner of the surface while unencumbered by buildings and in its natural state, is entitled to have it supported by the subjacent mineral strata. Those strata may of

course be removed by the owner of them, so that a sufficient support for the surface is left; but if the surface subsides, and is injured by the removal of these strata, although, on the supposition that the surface and the minerals belong to the same owner, the operation may not have been conducted negligently, nor contrary to the custom of the country, the owner of the surface may maintain an action against the owner of the minerals for the damage sustained by the subsidence."

In the case of Jones v. Wagner, 16 P. F. S. 434, Chief Justice Thompson, after referring to the foregoing and a number of other cases, concludes thus : " These citations prove two things, viz., that the owner of a mineral estate, if the law be not controlled by the conveyance, owes a servitude to the superincumbent estate, of sufficient support; consequently the failure to do so is negligence and may so be declared upon." All that was decided in these cases was re-affirmed in Coleman v. Chadwick, 30 P. F. S. 81, in which the right of actual support was asserted in the surface owner in most emphatic language. "Support is part and parcel of the reserved estate ; it is of common right, and hence must pass if at all, by express grant, and is not to be defeated by mere implication arising from language that does not import such an effect." Gordon, J., p. 87. Thus wherever the right of the surface owner is described it is referred to as a right to "support," "sufficient support," "proper support," "absolute support," but never as "ordinary" or "probable," or "apparent support." In truth the right would have but little if any value, if it existed only in this qualified and limited sense. If it is to depend absolutely upon the mere question whether the mine owner has exerted ordinary and reasonable precautions to preserve it, it follows that where such precautions have been observed it has no existence in practical effect, since in such circumstances there could be no recovery for its destruction. No text-book and no decision has been referred to our attention as advocating such a doctrine. Scranton v. Phillips, 13 Norr. 15, cited by the plaintiffs in error, decided only that the implied right of support to the surface might be conveyed away by the express words of a grant, and was distinguished from the previous cases, on that very ground. Of course we do not mean to be understood as holding that this right to actual support shall be superior to the consequences of convulsions of nature such as earthquakes, and such violent disturbances as may be classified as being the act of God. Nothing of that kind is claimed to have transpired in the present case. The record brings before us only the question whether the owner of the surface is entitled to such support merely as would ordinarily sustain the surface of the land. We are of

opinion that the learned court below ruled correctly on this subject, and therefore—

The judgment is affirmed.