Smith *v*. Glen Alden Coal Company et al., Appellants.

Argued April 12, 1943.  Before Maxey, C. J.; Drew, Linn, Stern, Patterson, Parker and Stearne, JJ.

*Joseph P. Flanagan,* for appellant, Second National Bank of Wilkes-Barre, No. 66.

*J. H. Oliver,* with him *Gilbert S. McClintock* and *Franklin B. Gelder,* for appellant, Glen Alden Coal Co., No. 76.

*J. Q. Creveling,* for appellant, Daisy R. Dungan, No. 67.

*David W. Phillips,* with him *Emanuel Laster, William J. Oliver, John McDonald* and *Thomas M. Lewis,* for appellees.

Opinion by Mr. Chief Justice Maxey, May 12, 1943:

In this action plaintiffs sought the rather anomalous decree that a good and marketable title in fee simple for an undivided one-fourth interest in "coal premises", hereinafter referred to as the coal, was vested in her *individually and* that she *as sole surviving executrix* of the Estate of John B. Smith, deceased, has the power to convey a good and marketable title in fee simple for an undivided one-fourth interest in the same premises, to the Glen Alden Coal Company, and that by reason of her contract to sell her interest in this coal, to this company, there was due and owing her by this company the sum of $2,512.50, without interest.

The parties to this record are identified as follows: The original plaintiff below was May Virginia Smith (hereinafter referred to as Miss Smith), acting in a dual capacity, i. e., individually and as sole surviving executrix of the estate of her father, John B. Smith, deceased, hereinafter referred to as the testator. The bill was filed on February 6, 1941. Miss Smith died on September 6, 1941, and D. N. Yeager and Sarah Davis were

substituted as parties plaintiff to this record, as executors of Miss Smith's estate. They are here now as appellees. After Miss Smith's death, the Second National Bank of Wilkes-Barre was appointed on October 2, 1942, as administrator d. b. n. c. t. a. of the estate of the testator, and intervened in these proceedings as a defendant. It is herein referred to as the Bank. The Glen Alden Coal Company by reason of its contract with Miss Smith for the purchase of the coal, is also a defendant. It is hereinafter referred to as Glen Alden. A third group of defendants consists of Daisy R. Dungan and 27 others. They were joined in this suit because they are the persons who, in addition to Miss Smith, claim to have an interest in the coal as descendants and heirs of the testator.

There are two basic questions in this case: First, was Miss Smith's one-fourth interest in her father's estate, under the ninth paragraph of his will, a life interest or an absolute interest? Second, if it was an absolute interest, was that interest in the coal, *realty or personalty?*

On November 3, 1879, the testator leased all the coal and other minerals in a certain parcel of land in Plymouth Township, to the Lehigh & Wilkes-Barre Coal Company, all of which company's capital stock is now owned by Glen Alden. The lessor died testate on July 19, 1904, and his executors were his son, his two daughters, his son-in-law, and the latter's wife. When this bill was filed all of these executors except Miss Smith were dead. On September 7, 1937, she, both as sole surviving executrix and in her own right individually, entered into an an agreement whereby she promised to convey for $2,-512.50 to Glen Alden, in fee simple, free and clear of all liens and encumbrances, an undivided one-fourth interest in and to the coal and all minerals described in the 1879 lease, supra, together with a one-fourth interest in "the rents, royalties, reversion and remainder and estate, real and personal to her", the grantor; together with

the right to mine and remove the coal without liability for surface support to the extent that she had the right to waive such liability. All rights to the grantor to surface support, vertical or lateral, she released and quit-claimed to the grantee. She agreed to convey the above to the Glen Alden by a general warranty deed conveying a good marketable title in fee simple to the premises and rights hereinbefore set forth, free and clear of all liens and encumbrances, in form satisfactory to the General Counsel of Grantee.

She tendered the Company a deed as provided by this agreement and approved as to form by its General Counsel, and demanded payment of the consideration of $2,512.50. The Company declined to pay this sum and accept the deed on account of the claim of other defendants to this coal, and because of the doubt whether Appellee's interest was an absolute interest or only a life estate. It agreed to accept the deed and pay the purchase price if it should be found that the deed so tendered conveyed a title in fee simple to the property agreed to be conveyed and free of liens and encumbrances.

The Chancellor in his adjudication found that Miss Smith "took an indefeasible fee simple estate under her father's will" and that "plaintiff's interest in the coal and in the lease is realty" and that Miss Smith could individually in her own right as a holder of a fee simple estate in the realty to the extent of her one-fourth interest sell this to Glen Alden and it entered a decree nisi accordingly.

The Court, en banc, after hearing upon exceptions to the decree nisi, reversed the adjudication as to Miss Smith's interest being real estate and held that she "was free to sell, assign and transfer to the Glen Alden Coal Company all her right, title and interest, being an absolute one-quarter interest in the royalties which belonged to her under her father's will accruing under the lease made in 1879 . . . ; not, however, to convey and transfer said interest as real estate but as personal property only."

The court also held that "the form of transfer should be changed". The court entered a final decree as follows: ". . . upon delivery to the Glen Alden Company of instrument in due and proper form, executed and acknowledged by the personal representative or representatives of May Virginia Smith, deceased, granting, selling, conveying and transferring all of the said May Virginia Smith's right, title and interest, being an undivided one-quarter interest in and to the coal lease between John B. Smith and Evaline B. Smith, lessors, and Lehigh and Wilkes-Barre Coal Company leasee, the Glen Alden Coal Company shall pay to the said personal representative or representatives of the said May Virginia Smith, deceased, the purchase money agreed upon, to wit, $2512.50 without interest."

Appeals were taken by the Bank, by Glen Alden, and by Daisy R. Dungan. The other heirs of John B. Smith did not appeal.

Glen Alden takes the position that the interest of Miss Smith in the coal was absolute and she had the power to convey an absolute estate to the extent of a one-fourth interest in the coal. It avers that it is willing to abide by the agreement to pay the executors of Miss Smith's estate $2,512.50. It says: "The only reason why the agreement was not carried out during the life time of Miss Smith was because of the doubt whether her estate and interest was absolute or was a life estate. Glen Alden also says "that upon the death of one having an interest as lessor in such a lease [as this], the royalties are payable to his personal representatives until such time as proper distribution of his estate has been made. Prager's Estate, 74 Pa. Superior Ct. 592." It also says: "We submit that the Lessor's interest in a coal property itself as a general proposition, as well as under the peculiar and particular clauses of this lease, vest in lessor an estate which is real estate, which the lessor . . . had the right to sell and convey by deed. . . . And then, under the decisions of this Court, there did remain

vested in lessors under this lease an estate which this Court has termed the 'third estate', namely the right to require coal to be left for the vertical and lateral support of the surface." Appellee contends that Miss Smith in her own right had the authority to convey to Glen Alden in fee simple an undivided one-fourth interest in the coal, in the coal lease, and in the "third estate".

The Bank contends that "the title to the coal lease in question passed to the executors as part of the residuary estate of the decedent for the purpose of administration . . . , that neither May Virginia Smith nor any of the residuary legatees had any interest in the specific coal lease which either of them could convey, that the interest of these residuary legatees is confined to an equal distribution of the funds received from the personal assets of the decedent to be accounted for by the executors, that Miss Smith's interest therein was a life estate, and that the title to the coal lease passed to the executors, rather than to the residuary legatees, for administration and ultimate distribution to the legatees in accordance with their respective interests under the will." The bank said nothing about "the third estate".

The third paragraph of testator's will gave his executors and the survivor of them "full power and authority" (1) to lease all of his real estate not specifically devised and to account for the royalties therefrom "as personalty" and (2) to sell and convey all of testator's real estate not specifically devised. After making specific devises and bequests of certain lands and personal property not involved in this case, the testator in the ninth paragraph of his will devised and bequeathed "all the rest, residue and remainder" of his estate, "real, personal and mixed" to his four children (naming them) and then added: "Should my daughter, May Virginia Smith, die leaving no child or children or issue of deceased children living at the time of her death, I give, devise and bequeath her share of my residuary estate to my other three children aforesaid and their heirs share

and share alike." When testator died, his interest in the 1879 lease on the coal and his right to surface support over that coal were intact.

We decide that Miss Smith took an absolute estate under her father's will. The language of the ninth paragraph brings this case within our ruling in *Lerch's Estate*, 309 Pa. 23, 159 A. 868, and *Crawford* v. *Withrow*, 314 Pa. 497, 171 A. 894. In the latter case we said: "Where there has been an absolute gift of a thing, later words in the same instrument will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of the donor (citing Robinson's Est., 282 Pa. 531; Mallory's Est., 285 Pa. 186; Lerch's Est., supra). And where the words used in a will are sufficient to vest an absolute estate, such interest is not to be cut down by subsequent provisions, unless the testator has indicated a clear intention to take away the estate previously given: Cross v. Miller, 290 Pa. 213, 216 (138 A. 822); Billmyer v. Billmyer, 296 Pa. 31 at 33 (145 A. 674)." In *Williamson* v. *Greene Improvement Co.*, 278 Pa. 358, 123 A. 307, it was held that where testatrix devised real estate to her children by name, to their heirs and assigns, and in the next paragraph directs that if any of them die without leaving a living child that the money or property given them shall be returned and divided equally among her children or grandchildren, and the whole tenor of the will gathered from its four corners indicates that testatrix aimed at equality among her children, and that they should come into their several interests soon after her decease, the will should be construed as giving the children an estate in fee.

In the case of *Davenport* v. *Graham*, 343 Pa. 497, 23 A. 2d 482, cited by the Bank, the court took the view that the phrase "whatever remains" in the fourth paragraph of the will in that case showed that the clause "died leaving no issue living at the time of such death" must be interpreted as referring to a death without issue irrespective of when death might occur, and not merely to the devisee's death before the testator's.

In the instant case we must, to be consistent with our rulings in *Lerch's Estate, Crawford* v. *Withrow,* and *Williamson* v. *Greene Improvement Co.,* all supra, and in many other cases, hold that the applicable testamentary provision here meant Miss Smith's death without issue *in the lifetime of the testator.* Since Miss Smith died without issue after the testator's death, the restrictive provision cited was inoperative to limit her inheritance. We agree with the court below that it was the manifest intent of the testator throughout his will to equalize his children in the distribution in the enjoyment of his estate. In the eleventh paragraph of his will he stated that he "tried to make a fair disposition of my property to my four children". Dividing the property *equally* among the four children was manifestly a "fair disposition". The court below pointed out that "it appears throughout the administration of the estate that distribution and conveyances had been made in which all of the heirs, devisees and legatees evidently assumed and took for granted that May Virginia Smith took an absolute interest, share and share alike, with John B. Smith's other children, notwithstanding the contingency mentioned in the ninth paragraph of the will concerning her decease without marriage and issue". It is true, as the court ended; "Those transactions . . . have no controlling force . . . but they have some significance." What *is* controlling with us is that the testamentary provisions in the three cases last above cited are substantially identical with the restrictive provisions in the will before us. The decisions in those cases therefore rule this case.

The next question is: Was the testator's interest in the coal realty or personalty? If it was the latter it is vested in the administrator d. b. n. c. t. a. for administration. It is settled in this State that a lease of coal in place, such as this is, "until such time as all the available merchantable coal shall have been mined and removed", *is a sale of an estate in fee simple* and leaves the

lessor with only an interest in the royalties to be paid him under that lease. That interest is personalty. This conclusion is supported by the decisions of this court in *Lillibridge* v. *Coal Co.*, 143 Pa. 293, 22 A. 1035; *Kingsley et al.* v. *Hillside Coal & I. Co.*, 144 Pa. 613, 23 A. 250; *Sanderson* v. *Scranton*, 105 Pa. 469; *Hosack* v. *Crill*, 18 Pa. Superior Ct. 90; *Webber* v. *Vogel*, 189 Pa. 156, 42 A. 4; *Gilberton Fuels, Inc.* v. *P. & R. C. & I. Co.*, 342 Pa. 192, 20 A. 217, and many other cases. In the *Sanderson* case this court said, "A severance of the surface from the underlying strata" of coal, by its lease until no coal remains "created a divided ownership in these distinct portions of the land."

After John B. Smith executed and delivered his "lease" of this coal, to the Lehigh and Wilkes-Barre Coal Co. on November 11, 1897, he no longer owned any estate in *it*, though he still retained his estate in the *surface* and in *his right to surface support*. When a vendor sells land on a contract his interest in it ceases to be real estate. "It becomes a chose in action, a personal demand for the consideration, money, which in case of death goes to his personal representatives, and the legal title is held only as security for the payment of the debt. The vendee becomes in substance the owner of the estate". *Longwell* v. *Bently*, 23 Pa. 99, 102,7.

In the instant case, Smith's interest in the lease was property but it was *not* real property. He had parted with his coal and in lieu thereof he had the lessee's obligation to pay him the purchase money in royalty installments.[1] In *Prager's Estate*, 74 Pa. Super. 592, the Superior Court in an opinion by Judge KELLER held that the sale of all the oil and gas on a farm was.a severance

---

[1] "Debts . . . are not property of the debtors; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property . . . and follow their domicile, wherever that may be." *State tax on Foreign-Held Bonds*, 82 U. S. 300, 320. "Wealth in a commercial age is made up largely of promises": Pound's Introduction to the Philosophy of Law, page 236.

of those minerals from the surface or the rest of the fee and the fact that the purchase money was payable in royalties instead of at one time did not change the character of the sale to that of a lease, and the purchase money and royalty were payable to the executors and not to the heirs or devisees of the testator.

"Where an estate in land is granted, whether for years, for life, or in fee, the existence of a condition subsequent in no way lessens the quantity of the estate granted. The grantor is divested of the entire estate of the term or the fee, and the grantee is invested with the same estate. The effect of the condition is simply that, if a breach shall occur, the grantor shall have a right to re-enter and thereby become revested with his former estate. Before breach this is regarded as a mere possibility, coupled with no interest in the land . . . After breach of the condition, what was before a mere possibility becomes a right to secure a revesting of the former estate by entry, or by action at law. Until such entry or action the quantity of the estate of the grantee is still unimpaired. If the right of entry is never exercised, the estate remains as before . . . Under feudal conditions, he who was out of possession was likely to be tempted to part with his claim to those who might gain possession by force or favor, rather than by right. To avoid this, and to discourage maintenance, the common law forbade the transfer of rights of entry." [2]

The decision in *Burke et ux.* v. *Kerr,* 142 Pa. Superior Ct. 37, seems to be at variance with the foregoing conclusions. There the Superior Court held that when the owners of land leased all the limestone under the land with the right to remove the same, for a royalty, the grantor retained an interest in the limestone as land which became subject to the lien of a judgment, citing *Coolbaugh* v. *Lehigh & Wilkes-Barre Coal Co.,* 213 Pa. 28, 62 A. 94, and *Gallagher* v. *Hicks,* 216 Pa. 243, 65 A. 623,

---

[2] From editorial foot-note to the report of *Bouvier* v. *B. & N. Y. Ry. Co.* in 60 L. R. A. at pg. 764. Case reported also in 67 N. J. L. 281.

wherein it was held that the lessor of coal in place retained an estate in the coal *to which the lien of a judgment would attach.* In the *Coolbaugh* case the following was quoted from *Denniston* v. *Haddock,* 200 Pa. 426, 50 A. 197: "The rules applicable to sales are not to be applied indiscriminately to such instruments [leases of coal in place] but each is to be construed like any other contract by its own terms."

These decisions are out of line with the rational foundation of those decisions which have established the rule in Pennsylvania that the lease of coal in place with the right to mine and remove all of it for a stipulated royalty vests in the lessee a fee.[*3] It is a necessary corollary that if the fee to the severed coal is vested in the lessee no interest in the coal as real property remains in the lessor and that his only interest therein is personal property. The lessor's interest in the lease is properly termed a possibility of reverter.

---

[*3] In the *Coolbaugh* case, supra, it was conceded in the opinion that the decision in that case was "apparently irreconcilable" with expressions in some of the cases holding a lease of all the coal in a tract to be a *sale* of coal as land. In the *Coolbaugh* case and a few other cases at about the same period there was manifested a reluctance to accept with *all its logical deductions* the doctrine that a land owner's "lease" of coal in place for a stipulated royalty per ton payable in the future, until all the merchantable and mineable coal was mined, amounted to a conveyance in fee of all the lessor's interest in that coal (except the right to surface support, hereinafter referred to). This court, in *Denniston* v. *Haddock,* 200 Pa. 426, 428, 50 A. 197, posed, without deciding, the question "Whether it would be better to call such instrument what it certainly was at common law, a lease without impeachment of waste, or . . . to call it a conditioned sale". Whatever such an instrument was "at common law", it is *now settled* in this Commonwealth that it is a conveyance of *a fee simple* estate in its subject-matter. In *Lazarus* v. *L. & W. Coal Co.,* 221 Pa. 415, we held that even a lease of coal for a *limited term of years* "was a grant of an interest in the land itself; not a mere license to take the coal but a sale of it, conditioned on its being removed in the time specified". See also *Hope's Appeal,* 1 Sadler (Pa.) 307. The subject of such a lease may be any substance which in its natural state is a part of the earth.

The decisions in *Burke* v. *Kerr, Coolbaugh* v. *Lehigh & W-B. Coal Co.,* and *Gallagher* v. *Hicks,* supra, will not be over-ruled by us * because of the principle of stare decisis. A rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the imperative demands of justice. These three decisions are limited to the holding that the grantor in such a lease retains only a sufficient interest in the thing leased to subject the "purchase money" *to be paid him* for it to the lien of a judgment against him.

After the testator delivered this lease his only interest in the coal was a *possibility of reverter,*[*4] and this "is not an estate, present or future, but merely a possibility of having a future estate" in that coal. "In the case of a base or qualified fee expiring by its own contingent limitation, it is a right to have the fee simple in possession contingent upon the determination of the fee defeasible. In the case of a fee limited upon a condition subsequent, it is a contingent right of re-entry upon condition broken": *Copenhaver* v. *Pendleton,* 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324, 331. "In none of these cases is there any *vested* interest in the land left in the grantor by way of *reversion,* but only a bare *possibility* that the land will return to him, upon the happening or failure to happen

---

* Nor does anything in this opinion affect our decisions in those cases which determine the nature of the estate of lessors in various types of oil leases. As to oil leases, see *Barnsdall* v. *Bradford Gas Co.,* 225 Pa. 338, *Venture Oil Co.* v. *Fretts,* 152 Pa. 451, and *McNish* v. *Stone,* 152 Pa. 457.

[*4] "A possibility of reverter . . . could not be granted or devised, at common law, but the right of reverter might be released to the person holding the estate in fee upon which the possibility of the reverter depended; and such release might be made either by the creator of the estate in fee upon which the possibility of reverter depended, or, if he had died, by the person who at the time of the release answered the description of his heir. 4 Kent's Com. 122, 123; 2 Washburn Real Prop. (6th Ed.) Sec. 1512, p. 498; *Nicoll* v. *N. Y. &c. R. Co.,* 12 N. Y. 121; *Atkins* v. *Gillespie,* 156 Tenn. 137, 299 S. W. 776."

of various *contingencies* upon which the estate granted may depend. The interest of the grantor is purely contingent. 1 Minor on Real Prop. (2d Ed.) Sec. 780, pp. 1012-14." The testator did not have a reversion in the coal for "an estate in reversion is the residue of an estate left to the grantor, to commence in possession after the determination of some particular estate granted out by him." Blackstone, Vol. 2, Sec. 176. 1 Minor on Real Property (2nd Ed.) Sec. 769, p. 1005, says: "A reversion is the remnant of an estate *continuing in the grantor,* undisposed of, after the grant of a part of his interest. It differs from a *remainder* in that it arises by *act of the law,* whereas a *remainder* is by *act of the parties.* A reversion, moreover, is the remnant *left in the grantor,* whilst a remainder is the remnant of the whole estate disposed of, after a preceding part of the same has been given away." After the lease of 1879 went into effect the testator had neither a reversion nor a remainder in the coal which was the subject of the lease. Even his future interest in the mined out area after the exhaustion of the coal was not an estate in the mineral itself.

What the lessee in the 1879 lease got was "the coal itself and not a mere license to mine coal upon compliance with certain conditions . . . the recording of the conveyance takes the place of a livery of seizin", per RICE, P. J., in *Hosack* v. *Crill,* supra. It follows that Miss Smith, the sole surviving executrix of the testator's estate, had when she executed the 1937 agreement with Glen Alden, the right as executor to agree to sell the testator's interest in that lease because that interest was *personal property. Individually* she had no alienable interest in that lease. The appellant bank's contention that the title to the coal lease passed to the executors as part of the residuary estate for the purpose of administration is sustained. This conclusion is consistent with the decisions of this court in *Lazarus' Estate,* 145 Pa. 1, 23 A. 372, and in *Robinson et al.* v. *Pierce et al.,* 278 Pa. 372, 123 A. 324.

As already noted, the testator never parted with his right to the support of the land out of which he carved the separate estate in the coal "leased" in 1879. "The owner of the surface is entitled to absolute support of his land, not as an easement or right depending on a supposed grant, but as a proprietary right at common law." *Carlin & Co.* v. *Chappel,* 101 Pa. 348: 2 Snyder on Mines, Sec. 1021.

It is well recognized in Pennsylvania that there may be three estates in land, namely, *coal, surface,* and *right of support,* so that one person may own the coal, another the surface, and the third the right of support: *Charnetski* v. *Miners Mills Coal Min. Co.,* 270 Pa. 459. "In the absence of express waiver . . . [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support." *Penman* v. *Jones,* 256 Pa. 416, 422, 100 A. 1043. "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." *Graff* v. *Scranton Coal Co.,* 244 Pa. 592, 91 A. 508. This servitude of support is an estate in land, sometimes referred to in this commonwealth as "the third estate". See *Penn Coal Co.* v. *Mahon,* 260 U. S. 393, and *Fifth Mut. Bldg. Soc. Appeal,* 317 Pa. 161, at 168, 176 A. 494.

When John B. Smith on November 3, 1879, leased "all the coal upon and under" the described tract of 23 acres and 41 perches he did not divest himself of his "third estate" [5] in that tract; this was a part of the

---

[5] This right to surface support which the testator retained did not *necessarily* give him the right to *any of the coal* constituting the subject of the lease. The lessee might choose to leave some of the coal as supporting pillars or it might choose to take out *all the coal* and substitute some other material as surface support. The lessor's right was to "surface support". It was said in *Noonan* v. *Pardee,* 200 Pa. 474, 483, 50 A. 255: When coal is "removed without leaving sufficient pillars or without supplying artificial props . . . the subjacent owner" fails "in an absolute duty he" owes "to his neighbor above".

real estate which he by his will empowered his executors to sell and "make and deliver" deeds therefor.

When Miss Smith executed the contract with the Glen Alden on September 7, 1937, she did so *both individually,* and in *her representative capacity as executrix* of the Estate of John B. Smith, deceased. In these capacities she agreed to convey to Glen Alden in fee simple, free and clear of all liens and encumbrances "an undivided one-fourth interest" in (1) "the coal and minerals", contained in the 23.34 acres therein described; (2) the 1879 lease, supra, and all rents and royalties arising therefrom; and (3) the "third estate", i. e. the right to surface support, both vertical and lateral. As to (1) she had no right in any capacity to make a conveyance, as the coal and minerals which she promised to convey *had vested in the lessee* under the 1879 lease. As to (2) she had the power as executrix to sell, as the subject-matter was personal property. As to (3) she had the power as executrix to sell for this was real estate and under the will she had specific authority to sell any real estate of which the testator had died seized.

The Glen Alden Coal Company is entitled upon a tender of $2512.50 being made by it to the administrator d. b. n. c. t. a. of the Estate of John B. Smith, deceased, to have granted, sold and conveyed to it those property rights which May Virginia Smith, as executrix, by her contract of September 7, 1937, agreed to "grant, bargain, sell and convey unto" that company, and all of which are enumerated in the preceding paragraph. Miss Smith's joinder *individually* in that 1937 contract is of no legal importance, since she as an individual had no power to convey *any part* of her father's estate to anybody. Her joining in the 1937 contract "in a *representative capacity* as executrix of the Estate of John B. Smith, Deceased", *is* of legal importance, for *only in that capacity* did she have any legal authority to contract to sell any real or personal property belonging to her father's estate.

The decree entered in this case is erroneous because except for the part relating to the tender of $2,512.50,

which is properly directed to the Glen Alden Coal Company, the decree is directed *only* to the Executors of the Executors of the Estate of May Virginia Smith. Since Miss Smith had no power as an individual to sell any part of her father's estate, it follows that her executors have no such power now. Miss Smith's power as executrix has passed to the Second National Bank of Wilkes-Barre, Pennsylvania, as administrator d. b. n. c. t. a. of the Estate of John B. Smith, Deceased, and to *it* should the decree be directed. This administrator has the power [6] to convey to the Glen Alden Coal Company everything constituting the subject-matter of the agreement of September 7, 1937, and it should be directed to make to that company the grant, sale and conveyance the company bargained for in the 1937 agreement, upon a tender being made by the company of the stipulated sum of $2,512.50.

Glen Alden in its bill of exceptions alleged that the Court erred in not entering decrees pro confesso as to those defendants not appearing or answering and as to whom plaintiff entered orders that the bill be taken pro confesso. This exception is well taken. We held in *Solar E. Co.* v. *Brookville Boro. et al.,* 300 Pa. 21, 150 A. 92, that when a bill in equity is taken pro confesso for want of an appearance or answer, the prothonotary's only function is to enter plaintiff's order to that effect. Under Equity Rule 51 the court must enter the appropriate final decree.

The decree is reversed and the record is remitted to the court below for further proceedings in conformity with this opinion; costs to be divided between the appellee and the appellant bank.

---

[6] As to the power of an administrator d. b. n. c. t. a. to sell the real estate of a testator who authorized his executor to do so, see the Act of June 7, 1917, P. L. 447, sec. 3(d), 20 P. S. 352; *Kemerer* v. *Johnstone,* 318 Pa. 526, 179 A. 67. *Potts, Admr. d. b. n. c. t. a.* v. *Breneman,* 182 Pa. 295.