## East Boston Coal Company's Petition

*Robert L. Coughlin*, for petitioner.

*R. B. Sheridan*, for heirs.

*E. C. Marianelli*, for Luzerne Anthracite, Inc.

*John R. Hessel*, for Department of Justice.

*Charles B. Waller*, for Miners National Bank of Wilkes-Barre et al.

*Joseph Mieszkowski*, for Water and Power Resources Board.

FLANNERY, J., for court en banc, March 15, 1945.— This dispute arose over the distribution of moneys paid by the Commonwealth of Pennsylvania for land in Kingston, Luzerne County, which was condemned for flood control purposes.

The land in question was originally owned by Jacob Sharps and John Dorrance. On January 26, 1863, it was leased for mining purposes and by various assignments, is now in the East Boston Coal Company, petitioner here, as lessee. The present owners are the heirs of the original lessors and they object to the proposed distribution.

The question is the ownership of the coal and the incidental right to the money paid for its condemnation.

The petitioner, East Boston Coal Company, claims title in fee, subject only to the lessor's right of royalty, by virtue of the lease to exhaustion, contending that such is the general rule.

The lessor claims title on the theory:

(a) That the instrument did not vest a fee in the lessee;

(b) That the term of 20 years with the option to continue only so long as the royalty was paid takes this lease out of the general rule, and

(c) That since the coal condemned consists of "pillars . . . left for the support of the gangways and the protection of the mines generally" it never passed to the lessee.

The lease provides, inter alia:

"SHARPS-DORRANCE LEASE."

". . . the said parties . . . do hereby lease and let . . . *all the coal* in, under and upon all those aforesaid several pieces, parcels and tracts of land together with the right of opening to mine and remove the same and of constructing all aid shafts . . . deemed necessary in mining and of locating and appropriating from time to time . . . so much of the surface of any of the said lands not to exceed in the aggregate 14 acres . . . for the purpose of erecting and maintaining machinery, breakers, mine houses, dwelling houses and such other improvements. . . ."

"With the right to use and occupy so much of the surface of any of the said lands as may be deemed expedient for the deposit of coal, coal dirt, rubbish of the mines, slate and other refuse made or prepared in connection with the mining operations." . . .

"To have and to hold the same . . . *for the term and period of 20 years and for such other and further time as the 'lessee' shall continue to pay the rent as named in this instrument* unless the term is sooner ended by

nonpayment of rent as hereinafter provided for." . . .
The lessee "shall pay all United States assessment on
the coal mined, and that during the term of this lease
the mining operations shall be carried on in a work-
man-like manner and sufficient pillars of coal shall be
left for the support of the gangways and the protection
of the mines generally; and it is further understood and
agreed that if at any time an installment of rent or
money paid thereof shall become due and remain un-
paid for the space of 90 days, the term of this lease
shall be at an end. . . ."

"But in case the term of the lease shall come to an
end by reason of all workable coal being mined and re-
moved, from the premises, 'the lessee may remove any
engine or engines, machinery and railroad iron from
the premises'." (Italics supplied.)

Whatever doubts may have existed previous to Smith
v. Glen Alden Coal Co. et al., 347 Pa. 290, there can no
longer be any question as to the general rule (p. 298) :

". . . It is settled in this State that a lease of coal
in place, such as this is, 'until such time as all the avail-
able merchantable coal shall have been mined and re-
moved', *is a sale of an estate in fee simple* and leaves
the lessor with only an interest in the royalties to be
paid him under that lease. That interest is personalty."

When we turn to the coal lease involved here we find
that it does "lease and let . . . *all the coal* in, under
and upon all those aforesaid pieces, parcels and
tracts of land. . . ." This would seem to authorize the
mining and removal of all the available merchantable
coal in the mines. It would seem to authorize the lessor
to mine to exhaustion. And the right to mine to ex-
haustion is the one essential which determines the
quantum of interest since it amounts to a conveyance
in fee of all the lessor's interest in the coal.

The manner, too, in which the term is described
clearly indicates that this was the intention of the
lessor. Having identified the subject of the lease as
"all the coal" the term is specified as "20 years and

for such other and further time as the 'lessee' shall continue to pay the rent as named in this instrument". In other words, if the lessee had not mined all the available merchantable coal within 20 years he might continue indefinitely at his option so as to accomplish that purpose, or so much of it as he desired. And we are fortified in this conclusion by the final paragraph of the lease which provides:

"But in case the term of the lease shall come to an end by reason of all workable coal being mined and removed, from the premises 'the lessee may remove any engine or engines, machinery and railroad iron. . . .' "

It is true, the continued operation under the lease is discretionary with the lessee, but we cannot agree that this changes our conclusions, or reduces the grant to a mere license as contended by counsel for the lessor. As was said in editorial footnote to the report of Bouvier v. B. & N. Y. Ry. Co. in 680 L. R. A. 764, and quoted, with approval, by Mr. Chief Justice Maxey in Smith v. Glen Alden Coal Co. et al., supra (p. 300) :

" 'Where an estate in land is granted, whether for years, for life, or in fee, the existence of a condition subsequent in no way lessens the quantity of the estate granted. The grantor is divested of the entire estate of the term or the fee, and the grantee is invested with the same estate. The effect of the condition is simply that, if a breach shall occur, the grantor shall have a right to reënter and thereby become revested with his former estate. Before breach this is regarded as a mere possibility, coupled with no interest in the land. .... After breach of the condition, what was before a mere possibility becomes a right to secure a revesting of the former estate by entry, or by action at law. Until such entry or action the quantity of the estate of the grantee is still unimpaired. If the right of entry is never exercised, the estate remains as before . . .' "

We are constrained to conclude that this lease falls within the general rule and vests a fee in the lessee. If

this be so, how can the pillar coal remain in the grantor, or lessor? He is divested of the entire estate in the coal and the grantee is invested with the same estate. To except the pillar coal would be to cut down the grant and would be repugnant to the fee and would be contrary to the doctrine as laid down in Prager's Estate, supra, and Smith v. Glen Alden Coal Co. et al., supra. Unless, therefore, it clearly appears from the terms of the instrument in its entirety that this coal is specifically taken out of the operation of the lease the part must follow the whole.

Pillar coal is to be left, as the lease specifies, "for the support of the gangways and the protection of the mines generally". Both parties agree that the only purpose of such pillars is to preserve the particular workings for future mining. Assuming, however, that the coal has been mined to exhaustion in a particular area then gangways to such an area or a roof over it would be without purpose and the pillars could have no function such as that specified in the lease. If mining to exhaustion is contemplated—and we are agreed it is —the pillars, therefore, pass with the fee. The parties themselves have recognized this in their treatment of other pillars. When they had served their purpose and the area had been mined out, they were removed and the royalty paid and accepted:

We have said they—the pillars—are left to protect the workings for future mining. Mining by whom? In the first instance, by the lessee. In the second instance—and only by way of a possibility of reverter— the workings may be preserved for mining by the lessor. In either event, title to their contents passed with the fee. And any right that would remain in the lessor would be a "possibility of reverter". Smith v. Glen Alden Coal Co. et al., supra. This would be an intangible right. A right in the nature of an incorporeal hereditament. A right that from all indications will never vest in the case we are considering. In any event,

it is a right which cannot vest so far as the pillars here are concerned because for all practical purposes they are gone and can no longer possibly revert.

From time to time it has been sought to establish the theory that rules applicable to sales were not to be applied to such instruments as so called leases of coal in place (leases for a limited term) which were rather licenses to mine and remove the coal, if reached during the term. Such was the theory formulated in Denniston v. Haddock, 200 Pa. 426, and Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124. Such was originally suggested by the lessor here.

But the chief justice disposes of that theory and of these authorities in the following language (p. 301):

"These decisions are out of line with the rational foundation of those decisions which have established the rule in Pennsylvania that the lease of coal in place with the right to mine and remove all of it for a stipulated royalty vests in the lessee a fee. It is a necessary corollary that if the fee to the severed coal is vested in the lessee no interest in the coal as real property remains in the lessor and that his only interest therein is personal property. The lessor's interest in the lease is properly termed a possibility of reverter."

And this, as we have already pointed out, can afford the lessor but little comfort.

It appears to us, therefore, that the lessee must prevail. It must be conceded as a general rule that a lease of all of the coal to exhaustion conveys a fee. We can find nothing in the terms of this lease which would justify us in taking it out of the general rule. We accept the evidence of the lessor and find as a fact that the pillars were necessary for the support of the gangways and the protection of the mines generally yet we cannot agree that this fact disturbs our conclusions, for under the law, as the Supreme Court has declared it to be, they are, for all purposes, the property of the lessee.

Rule granted August 17, 1943, is made absolute and distribution is directed as set out in Exhibit C of lessee's petition therefor.