## Coxe v. Lehigh Valley Railroad Co.

**112**

*Richard M. Hughes* and *R. Lawrence Coughlin*, for plaintiffs.

*John C. Phillips* and *Joseph F. Gallagher*, for defendant.

APONICK, J., December 31, 1958.—This action is one of trespass. Plaintiffs seek to recover damages for the surface and underlying coal of a strip of land which they allege was taken from them by the construction of defendant's railroad across their land.

The complaint alleges that plaintiffs are the owners of a tract of land in the City of Hazleton and Township of Hazle which is described by metes and bounds. It is then alleged that prior to August 1, 1950, the record made at the trial shows that date to be about 1886, defendant entered upon and has since occupied a strip of land, also described by metes and bounds, by constructing thereon a railroad with double tracks. This entry by the railroad is alleged to be without right or paying compensation therefor. Plaintiffs' entire cause of action is based upon the following paragraph of the complaint:

"7. The aforesaid land is valuable coal land and by its occupation, the defendant has taken, injured, destroyed, deprives and is depriving the plaintiffs not only of the surface of the land but also of the coal and other minerals underlying the surface of said land."

An answer was filed to the complaint which contained six separate defenses. Preliminary objections

in the nature of a demurrer were filed as to each of them. Judge Flannery, in an opinion concurred in by Judge Lewis, struck off three of the defenses: Coxe v. Lehigh Valley Railroad Co., 46 Luz. 211. The remaining defenses are: (1) Presumption of payment; (2) presumption of grant; (3) estoppel. A reply to the remaining defenses was filed and a motion for judgment on the pleadings was denied.

The case came on for trial before the undersigned and a jury. At the close of the case, defendant having offered no testimony, both sides moved for binding instructions. Defendant's motion was granted and plaintiffs now move for judgment n. o. v. and for a new trial.

The case was tried upon the theory set forth in paragraph 7 which has been quoted above, namely, that by occupying the surface, defendant deprived plaintiffs of the coal underneath. Although the question was not raised either at the trial or upon argument of this motion, we are of the opinion that that theory is erroneous.

In 1884, the land in question, both surface and coal, was owned by various individuals to whom we shall refer as the Coxe heirs. Plaintiffs are descendants of the Coxe heirs and successors to their rights. In that year, the Coxe heirs entered into a lease with the Cross Creek Coal Company. By the terms of that lease, the coal was leased to exhaustion and the lessee was given certain rights to use the surface for purposes connected with the mining of coal.

The legal effect of this lease is set forth by Chief Justice Maxey in Smith v. Glen Alden Coal Company, 347 Pa. 290, as follows, page 304:

"It is well recognized in Pennsylvania that there may be three estates in land, namely, *coal, surface* and *right of support,* so that one person may own the coal, another the surface and the third the right of

support: Charnetski v. Miners Mills Coal Min. Co., 270 Pa. 459. 'In the absence of express waiver . . . [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support.' Penman v. Jones, 256 Pa. 416, 422, 100 A. 1043. 'Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate.' Graff v. Scranton Coal Co., 244 Pa. 592, 91 A. 508. This servitude of support is an estate in land, sometimes referred to in this Commonwealth as 'the third estate'. See Penn Coal Co. v. Mahon, 260 U. S. 393, and Fifth Mut. Bldg. Soc. Appeal, 317 Pa. 161, at 168, 176 A. 494."

The failure of both sides to recognize the true import of that decision has been the cause of most of the difficulty in this case. When the Coxe heirs leased the coal to the Cross Creek Coal Company, they did not divest themselves of the "third estate" in the tract, to wit, the right of surface support. Therefore, the title to the surface and the right of support was in the Coxe heirs and the title to the coal was in the coal company. The title remained in that condition for over 60 years.

In 1886, defendant constructed a double track railroad across the surface of the land which was involved in the lease to the Cross Creek Coal Company, which, about this time, changed its name to Coxe Brothers and Company, Inc. In 1904, the Coxe heirs and Coxe Brothers and Company, Inc., entered into a consolidation lease which included the coal in question, together with certain rights to the surface, much the same as contained in the lease of 1884. In 1905, all of the stock of Coxe Brothers and Company, Inc., was acquired by defendant. On October 11, 1951, the lease of 1904 was formally cancelled and title to the remaining coal was returned to plaintiffs.

It is conceded that there is no record of any deed or other writing giving defendant the right to maintain its railroad over the land of plaintiffs. Defendant bases its present claim to title on two presumptions, i.e., that by the lapse of time it should be presumed that the land was paid for, or that there was some form of written grant which has since become lost. The law regarding those two presumptions is set forth in the exhaustive and learned opinion of Judge Flannery: Coxe v. Lehigh Valley Railroad Co., supra.

Those presumptions only operate after the lapse of 20 years (Coxe v. Lehigh Valley Railroad Co., supra) and plaintiffs contend that such period has not elapsed. They argue that they had no right of action until the cancellation of the lease in 1951, when the title to the coal reverted to them.

Such argument completely loses sight of the three estates created by the lease of 1884, as explained in Smith v. Glen Alden Coal Company, supra. Although this point was not presented in either of the briefs, we believe it is the deciding factor in this case. Defendant was never interested in acquiring the coal. It was not in the coal business when the railroad was constructed in 1886. It only desired to construct a railroad on the surface. This becomes crystal clear from the following excerpt taken from a letter written by defendant to Eckley B. Coxe, dated September 30, 1885, which is in evidence.

"In the construction of our proposed branch road from Delano to Hazleton, our line will pass through a portion of your estate as shown by a map which I enclose herewith.

"I enclose also a description of the land required through said estate, and would ask your favorable consideration of our request that you will *donate* to us the right of way for this branch road in accordance with this map and description . . ." (Italics supplied)

Whether any such grant was made does not appear in the evidence, but by the operation of the presumptions of payment or grant, or both, the law presumes that the title to what defendant requested is now in it. If defendant obtained this right of way, which it is now presumed that it did, it also secured the right of support which went with the title to the surface: Smith v. Glen Alden Coal Company, supra.

This support which defendant required did not have to be provided by leaving the coal in the ground. All of the coal could be taken out and some other substance could be substituted as surface support: Smith v. Glen Alden Coal Company, supra. In a footnote on page 304, the Supreme Court said in that case:

"This right to surface support which the testator retained did not *necessarily* give him the right to *any of the coal* constituting the subject of the lease. The lessee might choose to leave some of the coal as supporting pillars or it might choose to take out *all the coal* and substitute some other material as surface support."

The construction of the railroad on the surface, while it may have been a tortious taking of the surface and the concomitant right of support, both of which have ripened into title by reason of the lapse of time and the application of the two presumptions, *was not a taking of the coal.* The Cross Creek Coal Company or its successor, Coxe Brothers and Company, Inc., could have mined all of the coal under the tract, so long as the surface upon which the railroad was constructed was not disturbed. The remaining coal having reverted to plaintiffs by reason of the cancellation of the lease of 1904, they now have the right to mine the coal.

Therefore there has been no taking of the coal and plaintiffs have no cause of action for the recovery of its value. They may only recover, if they can over-

come the presumptions, for the surface which both parties agree is valued at $12.

Plaintiffs contend that both the lease of 1884 and the lease of 1904 give to the lessees the right to construct railroads on the surface. They then seek to expand this right for the construction of railroads to defendant in this case and contend that therefore plaintiffs had no right to the possession of the surface which was used for railroad purposes until the cancellation of the lease in 1951. By this process of reasoning plaintiffs contend that the 20-year period has not elapsed and the presumptions do not apply.

We have read the first lease with great care and have been unable to find any such privilege to construct railroads. It is not mentioned in the habendum clause, and there is no reference to railways in the section granting to the lessee the right to use the surface for certain specified purposes. The references to railways in other parts of the lease which cover the situation when the lease is terminated, is insufficient to give any such right. The lease of 1904 does give to the lessee the right to construct railways on the surface. However, we are of the opinion that the railways intended were those solely for the purpose of transporting the coal from place to place, in the ordinary processes of mining the coal and preparing it for market. Those railways were usually poorly constructed and of narrow gauge, not trunk line railroads such as this one. That permission cannot be extended to include the construction and operation of a double track trunk line railroad by a stranger to the lease.

Therefore plaintiffs were free, at all times, to bring an appropriate action against this defendant for any alleged trespass. They did not do so for 72 years. Their failure to take timely action raises the presumption in favor of defendant that there was either

payment made for the privilege or that there was a grant or deed which has since become lost.

Those presumptions may be overcome by sufficient and competent evidence, but after the lapse of 20 years, the burden shifts to plaintiff to show that there was no payment and no grant: Carter v. Ridge Turnpike Company, 208 Pa. 565, 567. This burden, in our opinion, plaintiffs have failed to sustain.

Whether the facts and evidence relied upon to rebut the presumptions are true, is a question of fact for the jury; but whether, if true, they are sufficient to rebut the presumption, is a question of law for the court: Corn v. Wilson, 365 Pa. 355, 358.

Plaintiffs, recognizing the burden placed upon them, offered testimony which they contend is sufficient to entitle them to go to the jury on the question of whether the presumptions have been overcome.

Eckley B. Coxe, one of the agents of the Coxe heirs, was called and testified that he had in his possession account books kept by the agents of the owners of the Coxe lands in the regular course of business. These records commenced November 1, 1881, and continued without a break to May 13, 1895. They started again on December 29, 1899, and ran to date.

Another witness was called who testified that he had examined those books and that he found no record of the receipt of any payment from the Lehigh Valley Railroad Company for the use of this strip of land.

This evidence was offered to rebut the presumption that there had been a payment for the use of the land in question. Conceding that this was some evidence for that purpose, it was incomplete. In the first place, there was a gap of over four years, during which time there might have been a payment made. In the second place, even if this testimony did prove no pay-

ment, it is no evidence to rebut the presumption of a grant without consideration, which is the request made in the letter of 1886 quoted above.

Plaintiffs rely on that letter and three other letters, in evidence, written about the same time and passing between Eckley B. Coxe and the general superintendent of defendant, to establish the fact that there was no grant in 1886 or 1887. Assuming that those letters prove that fact, they are insufficient to rebut the presumption that there was a grant of the surface and right of support at some later date, with or without consideration.

Plaintiffs entered in evidence five other letters, all of which were excluded by the trial judge.

Exhibits 10 and 11 are letters from the executive vice president of defendant to the land agent of defendant and the latter's reply. These letters were written in 1939.

In the first letter, the writer wishes to know whether the railroad company has the right of support in the area in question. The land agent replied that: "We never acquired paper title to the surface or supporting coal at the point in question."

It is conceded that defendant has no paper title to the surface and right of support. If the first letter had been addressed to counsel for defendant, the answer would have been that no title to the coal was required. These letters add nothing to the case.

Exhibit 12 is a letter written by the superintendent of defendant to the executive vice president of defendant in which he says that "according to our records the right of way at this location [the location in question] . . . is held by adverse possession." This is only another way of saying that there is no known paper title. It has no bearing on the decision of this case.

Exhibit 13 is a letter from the president of Coxe Brothers and Company, Inc., not a party to this action, to the mining engineer of defendant, dated November 10, 1948, in which he states that his company expects the railroad to purchase the coal under their tracks or move the tracks so that the coal can be recovered by strip mining.

Exhibit 14 is a reply from the chief engineer of defendant to the president of Coxe Brothers and Company, Inc., dated April 15, 1949.

Exhibit 5 was also excluded. This is a map which includes the land in question. It was made December 16, 1915, and contains the following notation:

"A-7 [the property here involved] Lehigh Valley Railroad (Main Line, M. & H. Div.) right of way. No paper title. Assumed width 60 feet. 4-A (60′ x 2880′). Right of support not determined. It is assumed for valuation that C. B. & Co. Inc., is liable for support."

Such notation adds nothing to the case. The only important thing is that it shows no paper title, but that is already conceded.

Plaintiffs' counsel have strenuously argued that the excluded exhibits should have been admitted in evidence. We do not deem it necessary for us to decide that question. For the purposes of this opinion, we shall consider them as part of the record as though they had been admitted in evidence at the trial. We do not think that they aid plaintiffs' case in any way. Mostly they refer to a lack of a paper title to the surface, and that fact is conceded.

Exhibits 13 and 14 recognize in laymen's language, the very legal proposition we have discussed, i.e., the three estates in land in Pennsylvania after the severance of the coal from the surface. Exhibit 13 states, in part:

"This coal is leased to Coxe Brothers and in turn is under sub-lease to the Haddock Mining Co. and

unless the Railroad decides to move their tracks off the coal area, which does not appear practical at this point, this should be considered notice that Coxe Brothers on behalf of the landlord and tenant must expect the Railroad Company to purchase the underlying coal for protection of the track."

Exhibit 14 reads, in part, as follows:

"This is to advise that we have occupied this right of way for a long period of years and we see no reason why our tracks or right of way should be interfered with by any coal stripping operations at this time, and we will not consider the purchase of any underlying coal for the protection of our tracks."

In other words, the president of Coxe Brothers and Company, Inc., asked the railroad company, defendant, to purchase the coal under the tracks, thereby conceding that the coal belonged to Coxe Brothers and Company, Inc., lessees under the leases of 1884 and 1904.

Defendant refused to consider purchasing the coal because it had title to the surface and the right of support recognized in law by the presumptions referred to. If this letter had been written by a lawyer familiar with the law of Pennsylvania, he would have said that defendant did not need to purchase the coal, that it only wanted the adequate support of the surface to which it was entitled.

The fact that it is apparent from those letters that the coal can only be recouped by strip mining, does not change the legal principle of the three estates in land. Defendant is still entitled to support of the surface.

To summarize our conclusions in this case, plaintiffs have title to the coal and can remove it, *provided*, they do not disturb the surface and defendant is entitled to the surface and right of support by reason

of the application of the presumptions of payment or grant, or both.

Accordingly, now, December 31, 1958, at 3 p.m., the motions of plaintiffs for judgment n. o. v. and for a new trial are denied and judgment is directed to be entered upon the verdict upon the payment of the appropriate fees.